**Roy James DUNCAN, Jr., Appellant,**

v.

**SPRINGFIELD R–12 SCHOOL DISTRICT and Employers Insurance of Wausau, Respondents.**

**No. 19699.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 16, 1995.

Motion for Rehearing or Transfer to Supreme Court Denied April 7, 1995.

Application to Transfer Denied
May 30, 1995.

Patrick J. Platter, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for appellant.

Raymond E. Whiteaker and John E. Price, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for respondents.

CROW, Judge.

Claimant, Roy James Duncan, Jr., filed a claim for compensation under The Workers' Compensation Law, chapter 287, RSMo1986, as amended. An administrative law judge ("ALJ") of the Division of Workers' Compensation denied the claim. Claimant thereupon filed an application for review with The Labor and Industrial Relations Commission ("Commission"). In a "Final Award Denying Compensation," Commission adopted the ALJ's findings and affirmed the denial. Claimant brings this appeal from Commission's decision.

Claimant maintains he suffers from "mental disorders" caused by stress arising out of

and in the course of his employment as a teacher by Springfield R–12 School District ("R–12"). The ALJ's findings, adopted by Commission, included a finding that the evidence failed to establish that Claimant's "psychological problems" arose out of and in the course of his employment.

Claimant's second point, which we address first, asserts the only reasonable conclusion from the evidence is that he suffered depression and anxiety attacks attempting to satisfy job performance requirements imposed by a supervisor. Before examining the evidence on that issue, it is helpful to review the case law on compensability of mental disorders and the concept of "accident" under workers' compensation.

In *Wilhite v. Hurd,* 411 S.W.2d 72 (Mo. 1967), a worker sought compensation for an eye injury and psychotic depression. He claimed the depression was caused by the injury. The Supreme Court of Missouri held mental conditions are compensable under workers' compensation "provided they are shown to have been directly and proximately caused by the accident." *Id.* at 78[5]. However, proof of the condition is not proof of causation. *Id.*

In *Boatwright v. ACF Industries, Inc.,* 463 S.W.2d 549 (Mo.App.1971), Commission found that a worker fell, sustaining physical injuries resulting in temporary traumatic neurosis. On appeal, the employer argued the psychoneurosis was caused by factors unrelated to the accident. The appellate court held the evidence sufficient to show the causal connection between the accident and the functional disabling psychoneurosis, *id.* at 554, and affirmed an award for temporary total disability.

In *Todd v. Goostree,* 493 S.W.2d 411 (Mo. App.1973), a truck driver suffered a traumatic neurosis upon discovering he had backed his truck over a co-worker, crushing him to death. The driver sought compensation for the neurosis. Commission denied the claim on the ground that the condition was not a compensable "injury" as statutorily defined. Commission's rationale was that inasmuch as the neurosis was not caused by an injury to the claimant's body, the neurosis was not covered by workers' compensation. *Id.* at

415. The appellate court, noting this was a case of first impression in Missouri, reviewed decisions from other states and held the neurosis was a compensable injury even though it was not caused by any physical impact to the claimant's body. *Id.* at 420–21.

In each of the cases discussed so far, there was a single, identifiable "accident" which allegedly caused the mental disorder.

In *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781 (Mo. banc 1983), the Supreme Court of Missouri expanded the definition of "accident" (within the meaning of workers' compensation) to cover instances where performance of an employee's usual and customary duties leads to physical breakdown or a change in pathology. *Id.* at 784. The Court said that if an injury is "clearly job related," it is compensable. *Id.* at 785. However, the claim in *Wolfgeher* was for a back sprain, not a mental disorder.

In *Wynn v. Navajo Freight Lines, Inc.,* 654 S.W.2d 87 (Mo. banc 1983), a truck driver died from a work related heart attack, and his widow sought workers' compensation death benefits. The Supreme Court of Missouri held the widow was entitled to benefits even though the heart attack was not preceded by any unusual event or abnormal strain. The right to compensation exists "if the actual triggering causes are found, on the basis of substantial evidence, to meet the 'job related' or 'work related' test of *Wolfgeher.*" *Wynn,* 654 S.W.2d at 89–90.

In *Tibbs v. Rowe Furniture Corp.,* 691 S.W.2d 410 (Mo.App.S.D.1985), a worker sustained a finger injury. He sought compensation for that injury and also for a mental disorder he attributed to the injury. Commission awarded compensation for the finger, but not the mental disorder. This Court, citing *Wilhite,* 411 S.W.2d at 78, held mental disorders are compensable under workers' compensation provided they are shown to be directly and proximately caused by a work related accident. *Tibbs,* 691 S.W.2d at 412–13[7]. However, this Court affirmed Commission's denial of benefits for the mental disorder, finding the evidence sufficient to support Commission's determination that the disorder was not caused by the finger injury.

In *Westerhold v. Unitog–Holden Manufacturing Co.,* 707 S.W.2d 456 (Mo.App.W.D. 1986), Commission denied a worker's claim for compensation for emotional and psychological disability. The worker averred her supervisor slapped her across the mouth, causing humiliation, psychological injury and injury to her central nervous system. The Western District of this Court held: *"Wolfgeher* does nothing to erase the necessity that the injury arise out of and in the course of the employment. The injury still clearly must be job related." *Westerhold,* 707 S.W.2d at 458. The Western District held the evidence, although conflicting, was sufficient to support Commission's finding of no causal connection between the claimant's job and her mental disorder.

In *Low v. ACF Industries,* 772 S.W.2d 904 (Mo.App.E.D.1989), Commission found a worker suffered extraordinary mental and emotional job related stress, which caused him to suffer cardiac dysrhythmias. Commission awarded compensation for permanent partial disability. The Eastern District of this Court held there was sufficient evidence to support Commission's finding that the cardiac dysrhythmias were directly and proximately caused by the work related stress endured by the worker. *Id.* at 907. The opinion continued: "This stress meets the 'job related' or 'work related' test of *Wolfgeher." Low,* 772 S.W.2d at 907–08.

Claimant pled he became disabled December 20, 1990. He taught that morning, then went outside during his lunch hour "to get fresh air and kind of relax and get ready for the afternoon." Upon returning inside and starting upstairs to class, his hands became numb. As he walked down the hall, his gait became "staggered." By the time he reached the classroom, he decided he should "go down to the office and talk with somebody."

Claimant reached the office, where he collapsed. He was taken to a hospital. As we interpret the hospital records, Claimant was treated for hyperventilation and released later that day. However, from then until the ALJ's hearing (November 18, 1993), he never again taught.

■ From the cases discussed *supra,* we conclude that at the time Claimant allegedly became disabled, a mental disorder resulting in disability was compensable under workers' compensation even though it was not caused by physical force, provided the mental disorder satisfied the "job related" test of *Wolfgeher.* 646 S.W.2d at 785.

Twenty months after Claimant allegedly became disabled, the General Assembly addressed compensability of mental injuries ostensibly caused by work related stress by amending § 287.120. Laws of Missouri 1992, H.B. 975, pp. 782–812. The amendment included these provisions:

"8. Mental injury resulting from work related stress does not arise out of and in the course of the employment, unless it is demonstrated that the stress is work related and was extraordinary and unusual. The amount of work stress shall be measured by objective standards and actual events.

9. A mental injury is not considered to arise out of and in the course of the employment if it resulted from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination or any similar action taken in good faith by the employer."

Claimant's brief asserts the above provisions cannot be applied retroactively, hence the law as it existed when his disability began (December 20, 1990) governs his claim.

R–12 and its insurer ("Respondents") proclaim that the addition of the above-quoted paragraphs to § 287.120 was "merely a codification of the preexisting case law with regard to psychological claims."

We need not decide whether Respondents are correct. Inasmuch as they maintain the 1992 legislation did not change the case law, we infer their position is that the claim here is governed by the law as declared in the cases prior to that legislation. Accordingly, we decline to address *sua sponte* the issue of retroactivity of paragraphs 8 and 9.

■ Having identified the law to be applied, we now examine the evidence regarding Claimant's mental condition and its cause. In doing so, we review the entire

record, including legitimate inferences drawn therefrom, in a light most favorable to Commission's decision. *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 598[4] (Mo. banc 1994).

Following Claimant's collapse on December 20, 1990, a physician who had treated him on earlier occasions referred him to Philip J. LeFevre, a psychiatrist. LeFevre first saw Claimant January 3, 1991, and continued treating him thereafter. LeFevre's testimony included this:

"Q ... have you reached a diagnosis for Roy or series of diagnoses?

A Well, I think there's a series of diagnoses. I think the so-called Axis I diagnosis is major depressive disorder. I think Axis II, which is a personality diagnosis, would be a passive-dependent personality structure....

Q And for those people who may read this testimony later who may not know what Axis I and Axis II mean in distinguishing one diagnosis from another, could you describe those?

A Yes. This is the nomenclature for the Diagnostic Manual, and the Axis I is the major psychiatric disorders, such as major depression, schizophrenia, manic-depressive disease, et cetera. The Axis II diagnosis is the personality disorders."

LeFevre sent Claimant to Robert J. Murney, a clinical psychologist, for evaluation. Murney saw Claimant January 10, 1991. Murney's testimony:

"Q And what was [your] diagnosis or series of diagnoses?

A Axis I would be a major depressive order [sic]. The second diagnosis under Axis I would be a generalized anxiety disorder. Again, primarily on his own report, a panic disorder with agoraphobia.

Q And what is agoraphobia?

A A fear of being in crowds, of fear of being in any situation where he can't escape.... And on Axis II, I would give him a dependent and a schizoid personality.

Q And what do you mean by 'schizoid'?

A Well, schizoid is a strong tendency toward emotional withdrawal."

Warren J. Phillips, a psychiatrist, examined Claimant August 25, 1992, at the request of Respondents. Phillips' testimony included this:

"Q Doctor, based upon your clinical examination ... as well as a review of ... background materials and ... medical information, did you arrive at a diagnosis of Mr. Duncan's condition?

. . . . .

A Yes. I think at the time I saw Mr. Duncan and he had been, for some length of time, met the criteria to have a depressive illness. In addition to that, he had episodes that I think are documented in the records as well as in the history that he gave me that he probably suffered on occasion panic disorder or at least hyperventilation episodes that I suspect would be more clearly diagnosed as panic disorder that he's had off and on for long periods of time. In addition to that, he's a very passive dependent person, a dependent personality.

. . . . .

Q ... did Mr. Duncan present to you as having ... a biochemical imbalance?

A The depressive illness that he suffers, in my medical opinion, is a biochemical, has a biochemical substrate and that these illnesses are genetically predetermined.

Q And that would be true in Mr. Duncan's case?

A This would be true in Mr. Duncan's case, yes."

Claimant's brief directs us to testimony of psychiatrist LeFevre and psychologist Murney which, according to Claimant, establishes that his "depression and anxiety disorder are work related." Citing *Boatwright*, 463 S.W.2d at 554, Claimant asserts: "The work activity need not be the sole cause of the mental disorder. It is enough that the work activity was the precipitating factor which led to the functional disability." Claimant insists the testimony of LeFevre and Murney dem-

onstrates Claimant's depression and anxiety attacks resulted from harassment at school which started in April, 1990, when a new supervisor began evaluating him.

Claimant theorizes Commission's denial of his claim was predicated on the assumption that he "suffered the same disorder before 1990 as he has afterwards." On the contrary, says Claimant, he "had a dependent personality before 1990." Claimant's position is that the depression and anxiety attacks which began December 20, 1990, were caused by stress created by his supervisor, with which Claimant was unable to cope because of his passive-dependent personality. Claimant argues his personality does not defeat his claim, but instead "explains why the claim is compensable." In Claimant's words, "[I] was too gentle ... to cope with the distrust and harassment from [the supervisor]." Claimant proclaims: "An employee who is predisposed to suffering a ... mental condition has a compensable claim ... when the work activity causes, accelerates or contributes to the condition for which the employee is already predisposed."

In reviewing Commission's decision, we defer to Commission on issues involving credibility of witnesses and the weight to be given their testimony. *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527[1] (Mo. banc 1993). We may overturn Commission's decision only if it is unsupported by substantial evidence or clearly contrary to the overwhelming weight of the evidence. *Johnson v. City of Duenweg Fire Department*, 735 S.W.2d 364, 366[1] (Mo. banc 1987). Where the right to compensation depends upon which of two conflicting medical theories should be accepted, the issue is peculiarly for Commission's determination. *Vollmar v. Board of Jewish Education*, 287 S.W.2d 868, 872[4] (Mo.1956). Accordingly, we disregard evidence that might support a finding different than Commission's, even though a contrary finding would be supported by the evidence. *Evans v. Consumer Programs, Inc.*, 849 S.W.2d 183, 185[2] (Mo.App.S.D.1993); *Rector v. City of Springfield*, 820 S.W.2d 639, 640[3] (Mo.App. S.D.1991).

Consistent with those guidelines, we note the following testimony of psychiatrist Phillips on the causation issue:

"Q Doctor, did you ... arrive at an opinion and conclusion as to whether or not [Claimant's] depression and ... panic disorder, were either of these conditions related to his employment with the Springfield school system?

.    .    .    .

A ... it's quite clear to me what the etiology of this man's depressive illness has been. My feeling is that the depressive illness was going to occur in this man at some point in time in his life, it doesn't matter where he was working, and that whatever employment situation he might have been experiencing, it would have happened at that time.

.    .    .    .    .

Q Is it therefore true or is it not true that any ordinary stressors of life are going to trigger in [Claimant] during the course of his lifetime, and perhaps even intermittently during the course of his lifetime, depressive episodes?

.    .    .    .    .

A A depression basically is a chronic recurring illness.... A lot of people focus on some issue that's happened that they see as a cause of the depression but that, quite frequently, is a red herring rather than facts.... I think Mr. Duncan, at the time this happened, it wasn't anything going on unusual near as I could tell other than they had set some outcome studies which was new to the school about what you are going to do with your work and what was going to happen and ... he got caught up in that, I think, and focused on that as a problem for him, but I don't think it was an unusual situation.

Q ... is it or is it not true that this man was unable before and is unable now to cope with the ordinary stressors of life?

A My feeling is that, yes, he probably is not able to cope and certainly wasn't

able to cope at the time I saw him. He hadn't been able to cope for long periods of time. Whether he could be treated well enough to cope in the future, I would hope that could happen for him, but I don't know that. I think at the time that I saw him, and I don't know what's happened since, that I probably would have chosen a different medication to approach this problem but, here again, I think that's his illness. I don't think it had anything to do with the fact he's working for the school system."

A written report by psychiatrist Phillips contains this summary:

"Mr. Duncan is a passive dependent person who has extreme feelings of insecurity and strong dependency needs. This creates a significant problem for him in functioning in any kind of an environment. He has difficulty when he is be [sic] expected to meet criteria that would be a standard for his professional functioning. He currently is depressed. I do not feel that the environment in which he currently works would be any different than any other environment in which he might be employed as a teacher. Therefore, I do not feel that the work environment created or was a stimulus for his current difficulties."

In the testimony of LeFevre, Claimant's treating psychiatrist, we find this:

"Q  ... Mr. Duncan himself described that on the day in question he'd been to lunch, he was returning to his classroom from lunch; nothing that happened that morning was necessarily upsetting to him, but simply he walked up the stairs, and he suddenly couldn't go in the classroom. Would this not be an indication that this was a culmination of Mr. Duncan's life stressors from the day he was born to that point?

.     .     .     .     .

A  My answer would be that it would not take a specific thing that morning for him to have something happen.

Q  It was something that had been accumulating throughout his lifetime?

A  It could be something that happened the day before. It could have been something that happened the month before. It could be that the thought hit him as he entered the thing [sic] that he was incompetent. It could have been anything.

Q  Anything from inside the work environment to outside the work environment?

A  Yes."

Apparently recognizing the above evidence is adverse to him, Claimant attempts to liken his claim to that of a worker with degenerative disc disease who twists his back while performing physically strenuous work, causing a herniated disc. Claimant asserts the injury is compensable and it makes no difference that the worker was more vulnerable to the injury than a worker with a healthy spine. Therefore, reasons Claimant, he is entitled to compensation even though his passive-dependent personality structure rendered him vulnerable to the job related stress that began in April, 1990.

The flaw in the analogy is that the hypothetical disc injury is compensable only if the act that causes it is job related. If the worker herniates the disc moving furniture in his home, the injury is not compensable.

█  Although Claimant maintains his depression and anxiety attacks were caused by stress created by his supervisor, Commission was not required to accept that hypothesis. The testimony of psychiatrists Phillips and LeFevre, quoted *supra*, was sufficient to dispel such a notion. As emphasized in *Wilhite*, 411 S.W.2d at 78[5], proof of the condition is not proof of causation.

█  A party claiming workers' compensation benefits bears the burden of proving all material elements of his claim. *Meilves v. Morris*, 422 S.W.2d 335, 339[5] (Mo.1968). Thus, it was Claimant's burden to prove a causal connection between his mental disorders and the alleged harassment by his supervisor. Proof of the causal connection is the link that establishes the condition for which compensation is sought arose out of and in the course of employment. *Johnson*

*v. City of Kirksville,* 855 S.W.2d 396, 398[6] (Mo.App.W.D.1993).

■ We hold the testimony of psychiatrists Phillips and LeFevre, quoted *supra,* constituted substantial evidence to support Commission's finding that Claimant failed to establish that his depression and anxiety attacks arose out of and in the course of his employment. Claimant's second point is denied.

Claimant's first point avers Commission erred in that "it failed to declare the law under which mental disorders resulting from sustained and progressive stress are compensable." Claimant maintains such disorders are compensable even though a worker "suffered latent non-disabling conditions before the events."

Claimant cites no case requiring Commission to "declare the law" when it rules on a workers' compensation claim. The argument following the first point, as we comprehend it, is that Commission ignored the progression of cases which expanded the definition of "accident" so as to allow recovery for aggravation of preexisting conditions. By analogy, Claimant asserts mental disorders such as his are compensable.

The ALJ's decision, adopted by Commission, cited *Westerhold,* 707 S.W.2d 456, discussed earlier in this opinion. *Westerhold,* like the instant case, hinged on whether there was a causal connection between the worker's depressive mental state and the duties of her employment or the conditions under which she was required to perform them. Nothing in *Westerhold* suggests job related mental disorders are not compensable. *Westerhold* merely held the evidence sufficient to support Commission's factual finding that there was no causal connection between the worker's job and her mental disorder.

As Respondents point out, Claimant's claim presents no unique legal questions. The dispositive issue is whether he proved the requisite causal connection between his mental disorders and his employment. Nothing in Commission's award indicates it misunderstood the law on that issue. Indeed, the ALJ's decision, adopted by Commission, contains a meticulous review of the evidence on causation. Claimant's first point is denied.

Claimant's third point attacks Commission's finding that he is not permanently and totally disabled. Inasmuch as we have upheld Commission's finding that the evidence failed to establish Claimant's mental disorders arose out of and in the course of his employment, the extent to which he is disabled by those disorders is moot.

■ Claimant's fourth—and final—point alleges Commission erred in failing to order R–12 to pay Claimant a day's wages and travel mileage for a journey to Prairie Village, Kansas, where he was examined by psychiatrist Phillips. Claimant directs us to a page in the 519–page transcript where Respondents' lawyer admitted "we owe that."

At the outset of the ALJ's hearing, the ALJ carefully enumerated the issues to be adjudicated (seven in all). The ALJ did not mention the issue raised by Claimant's fourth point. The ALJ asked counsel for each side whether the issues he listed were the only ones to be resolved. Counsel replied, "Yes, sir."

The ALJ's written decision set forth the identical issues he identified at the start of the hearing, and did not mention the issue presented by Claimant's fourth point.

Claimant's application to Commission for review of the ALJ's decision contained three assignments of error, but did not mention the issue presented by his fourth point.

Although Claimant insists he "properly submitted this error to the division and commission in a full manner," he cites nothing in the record to substantiate this. Our search of the record has produced no substantiation.

Issues not raised before Commission cannot be raised on appeal to this Court. *Vinson v. Curators of the University of Missouri,* 822 S.W.2d 504, 508[6] (Mo.App.E.D. 1991); *Chambliss v. Lutheran Medical Center,* 822 S.W.2d 926, 932[13] (Mo.App.E.D. 1991). Consequently, Claimant's fourth point is ineligible for review.

Commission's "Final Award Denying Compensation" is affirmed.

GARRISON, P.J., and PREWITT, J., concur.