v.

**METROMEDIA STEAKHOUSES COMPANY, INC., Employer and National Union Fire Insurance Co., Appellants.**

No. 69604.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 13, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 1, 1996.

Application to Transfer Denied
Nov. 19, 1996.

Hinshaw & Culbertson, John J. Mohan, St. Louis, for appellants.

Kiegel & Balmer, P.C., Frank W. Kriegel, Jr., St. Louis, for respondent.

PUDLOWSKI, Presiding Judge.

On May 22, 1992, respondent P.M.[1] was on an out-of-town business trip in her capacity as a marketing and advertising manager for appellant Metromedia Steakhouse when she was raped by Richard Biederman, a high-level Metromedia executive. Psychological trauma ensued, escalating over time despite her attempts to continue working for over a year after the attack. Eventually, P.M.'s mental condition deteriorated to the point where she was entirely unable to work (according to numerous doctors). The instant Worker's Compensation action was subsequently filed.

During the period from June 3, 1993, to October 28, 1993, while P.M. was unable to work but was still a Metromedia employee, Metromedia made disability payments to her in amounts equivalent to two-thirds of her salary. Alleging that these benefits were terminated unjustifiably, without prior notice or explanation, P.M. sought a hardship hearing pursuant to RSMo. § 287.203, which the administrative law judge (ALJ) granted. After the accelerated hearing, the ALJ concluded that P.M. was permanently, totally disabled and entered an award accordingly. Citing § 287.203's authorization for an award of the "cost of recovery," the ALJ also ordered that Metromedia pay P.M.'s attorney's fee. The Labor and Industrial Relations Commission (LIRC) affirmed this award *in toto.*

Metromedia and its insurer, National Union Fire Insurance Company (appellants), now challenge this award.[2] Appellants contend that the ALJ erred in conducting the hearing under § 287.203 (and in awarding attorney's fee pursuant to that provision), that there was insufficient evidence that P.M.'s disability is permanent, and that the ALJ's award of future medical expenses is "vague, indefinite and not authorized" by relevant law. The award is affirmed in its entirety.

The only serious issues raised by appellants' concern § 287.203. That statute was enacted in 1993, and there are no cases interpreting its provisions. In relevant part, it states:

> Whenever the employer has provided compensation under section 287.170, 287.180 or 287.200, and terminates such compensation, the employer shall notify the employee of such termination and shall advise the employee of the reason for such termination. If the employee disputes the termination of such benefits, the employee may request a hearing before the division.... Reasonable cost of recovery shall be awarded to the prevailing party.

The contention appellants argue with the most vehemence is that they never furnished P.M. with the kind of benefits contemplated by the statute, so that the predicate for a § 287.203 hearing (i.e., termination of bene-

1. Our use of respondent's initials instead of her full name is not intended to depreciate her in any way, but only to spare her any embarrassment or anguish she might otherwise experience.

2. P.M. asserts that National Union is barred from bringing this appeal because it did not file an Application for Review with the LIRC. Under Missouri law, references to an employer in a Worker's Compensation case impliedly includes the employer's insurer.

fits) was not satisfied. While tacitly conceding that they provided benefits to P.M. and later terminated them, appellants assert that there is an absence of substantial evidence that these payments are properly classifiable as Worker's Compensation benefits.

Two Metromedia inter-office memoranda demonstrate that P.M. was provided the benefits at issue and that such benefits were terminated; thus, the only dispute concerns how these benefits should be labelled. Though we need not decide it today, this court is not at all sure that the label matters; the relevant point is that after sustaining a work-related injury, P.M. received, then lost, employer-provided disability benefits while she was unable to work. In any event, examination of the inter-office memorandum dated June 2, 1993, reveals that the disability payments made were calculated as 66⅔% of her salary—the amount which §§ 287.170, 287.180, and 287.200 require. This is a sufficient basis for the LIRC's factual determination that the disability payments received by P.M. were Worker's Compensation benefits made pursuant to one of the relevant statutory provisions.

The evidence which appellants cite in support of the opposite conclusion does not undermine the validity of the award. The June 2 memo contains a line which reads, "Integrate pay with Worker's Compensation" followed by the selections "yes," "no" and "not determined yet." The "not determined yet" and "no" selections each have an "X" by them, though the "X" by "not determined yet" has been marked through. Appellants argue that this line proves that P.M. did not in fact receive Worker's Compensation benefits, but we find this evidence ambiguous. The memo does not explain the quoted line, nor is it self-explanatory. Even if this line indicates that disabled Metromedia employees are potentially eligible for two separate disability payments (i.e., regular wages and Worker's Compensation), the memo does not on its face reveal which one P.M. received and which was left "unintegrated" by selection of the "no" response.

■ Appellants also rely on a statement which P.M. submitted to the ALJ in her Application for Hardship Setting, which

reads as follows: "The employer has wholly failed and omitted to pay the employee any temporary total disability benefits...." Appellants claim this is an admission which conclusively demonstrates that P.M. "received absolutely no benefits for the care of her work-related injuries." This is a curious position for appellants to take, especially given the stridency with which it is urged, as they elsewhere admit that Metromedia did provide disability benefits. But it hardly matters. The LIRC may have reconciled P.M.'s statement in her Application for Hardship Setting with the facts of the case by concluding that the payments provided by Metromedia were temporary partial (§ 287.180) or permanent total (§ 287.200) disability payments rather than temporary total benefits. More likely, they accepted P.M.'s subsequent explanation that at the time the statements in the application were made, P.M. was suffering from memory loss caused by the electrotherapy she had received as treatment for her psychiatric condition. In any event, our standard of review requires merely that the LIRC's award be supported by competent and substantial evidence and that it not be clearly contrary to the overwhelming weight of the evidence; the LIRC was free to disregard any evidence before it, including the statement on which appellants rely. *Strate v. Al Baker's Restaurant*, 864 S.W.2d 417, 419–421 (Mo.App. E.D. 1993).

■ Appellants also argue that the ALJ erred in awarding P.M. her attorney's fee irrespective of whether the hearing was properly conducted under § 287.203, because the phrase "cost of recovery" does not include attorney's fee. Appellants point out that when a statute provides for an award of "costs" to a prevailing litigant, authorization for an award of attorney's fee is generally not conferred thereby. *Washington University v. Royal Crown Bottling Co.*, 801 S.W.2d 458, 470 (Mo.App. E.D.1990). However, there is no Missouri case addressing the question of whether the novel statutory phrase "cost of recovery" likewise excludes attorney's fee.

Thus, we are faced with an issue of first impression. Our research does not uncover

use of the phrase "cost of recovery" in the worker's compensation statute of any other state. However, Michigan Compiled Laws Annotated § 418.827(6) defines "expenses of recovery" to include attorney's fee. Likewise, Montana Code Annotated (1995) § 39–71–414 uses the phrase "cost of the action" as a term inclusive of attorney's fee, and the Montana Supreme Court in *Zacher v. American Insurance Co.,* 243 Mont. 226, 794 P.2d 335, 337 (1990) treats that phrase as interchangeable with the phrase "cost of recovery." Furthermore, courts in a wide variety of states use the phrase "cost of recovery" to include attorney's fee; a non-exhaustive listing includes Louisiana (*see Taylor v. Production Services, Inc. of Mississippi,* 600 So.2d 63, 65 (La.1992)); Alaska (*see Manson–Osberg Co. v. State,* 552 P.2d 654, 660 (Alaska 1976)); Delaware (*see Keeler v. Harford Mutual Insurance Co.,* 672 A.2d 1012, 1017 (Del. 1996)); Nebraska (*see Yaeger v. City of Lincoln,* 246 Neb. 711, 523 N.W.2d 352, 357 (Neb.1994)); Wyoming (*see Wyoming State Treas. ex rel. Worker's Comp. Div. v. McIntosh,* 557 P.2d 743, 746 (Wyo.1976)); and Pennsylvania (*see Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board,* 506 Pa. 592, 487 A.2d 794 (1985)). Finally, we think that the phrase "cost of recovery" contemplates an award of attorney's fee on its face, since legal fees are unquestionably the largest cost incurred when an employee is forced to sue to recover a Worker's Compensation award. We hold that the LIRC correctly interpreted § 287.203 when it awarded P.M. her attorney's fee pursuant to that provision.[3]

██ Appellants assert further that there is insufficient evidence in the record to support the LIRC's conclusion that P.M.'s disability is permanent. Appellants are correct that, under Missouri law, a Worker's Compensation claimant alleging permanent disability must adduce medical evidence demonstrating with reasonable certainty that the disability is in fact permanent. *Matzker v. St. Joseph Minerals Corp.,* 740 S.W.2d 362,

363 (Mo.App. E.D.1987). Appellants take a wrong turn, however, when they argue that this "reasonable certainty" standard is not met unless a medical expert testifies in those exact words. There is nothing talismanic about the phrase "reasonable certainty." The words a medical expert uses when testifying are important, not in themselves, but as a reflection of any doubts she may have about the permanence of the injury.

In this case, Dr. Dubinsky, P.M.'s medical expert, was repeatedly questioned as to whether he believed P.M.'s disability to be permanent. He responded as follows:

> I hate to say yes to that, but that's the way it looks to me. . . .
>
> . . . What I'm saying is I'm not suggesting that—that Ms. [P.M.] or any professional that she seeks help from should just give up and say forget it because where there's life there's hope, but what I'm saying is that, given her treatment history, this condition looks permanent to me.

When Dr. Dubinsky's testimony on this issue is viewed as a whole, it imparts a firm impression that while he does not wish for his patient to cease hoping for an improvement in the quality of her life, he does regard her as permanently disabled.

██ Appellants also argue that because P.M. had been able to work as a volunteer in a hospital for four hours a week around the time of the hearing, she has shown signs of improvement and, therefore, cannot be permanently disabled. It scarcely need be said, as a matter of pure logic, that a permanently disabled person may show signs of improvement while remaining permanently disabled. The improvement may not be significant enough to cast doubt on the diagnosis of permanency; whether this is so is beyond lay understanding and must be resolved by experts. The LIRC's finding of permanent, total disability is supported by substantial evidence.

---

**3.** Appellants also contend (in their reply brief) that P.M. failed to present substantial evidence that the dollar amount awarded to her for payment of her attorney is reasonable. However, appellants did not raise this point in their initial brief, and it is, therefore, not reviewable. We note in passing that the attorney's fee was 25% of the underlying judgment, the standard fee in Worker's Compensation cases.

Finally, appellants challenge the portion of the LIRC's award ordering them to pay P.M.'s future medical costs incurred in treating the psychiatric condition resulting from the rape. Appellants claim this component of the award is "vague, indefinite and not unauthorized" by law. We understand appellants to be making two separate arguments with respect to the award of future medical costs: that the judgment awarded costs in an uncertain amount and is, therefore, unenforceable and that costs for which appellants are made responsible are not reasonably traceable to the "accident" (appellants' word choice) causing P.M.'s disability. These assertions are meritless.

■ Appellants contend that under the LIRC's order, they might be saddled with costs which were not reasonably necessary to treat P.M.'s psychiatric condition resulting from the rape or which were incurred in the treatment of a psychiatric condition apart from the one resulting from the rape. The order itself only imposes on appellants' liability for the cost of "future medical treatment for the injuries sustained by [P.M.] in the rape" and for nursing care expenses "causally related" to the events giving rise to her condition; the fact that the words "reasonably necessary" are absent from the LIRC's opinion is of no moment. Thus, we are forced to conclude that appellants' "reasonable necessity of costs" argument is merely a veiled attempt at re-trying the causation issue. Causation is not an issue that has been properly presented for appellate review.

■ Appellants also make the baffling assertion that a Worker's Compensation award may not require an employer to make payments for medical treatment which extend for the duration of an employee's life, citing *Brollier v. Van Alstine*, 236 Mo.App. 1233, 163 S.W.2d 109 (1942). But *Brollier* does not provide the rule of law for which appellants cite. In *Brollier*, the court affirmed an award which imposed liability for the costs of the permanently, totally disabled claimant's rehabilitation, even though such rehabilitation might never cure the claimant. To the extent *Brollier* is concerned with the duration of future medical cost awards, the opinion merely states that such awards are constrained only by the condition and requirements of the claimant, as established by the evidence. *Id.* 163 S.W.2d at 116. The LIRC was correct in awarding P.M. the costs of her medical treatment and custodial care, upon a finding that same will be necessary for the duration of her life.

Floating around appellants' final point is the half-articulated suggestion that the LIRC's order violates the principle that a judgment must be definite enough for a sheriff to execute it by levy. The reduction of the position appellants seem to advocate is that there could never be an award of future medical costs where the employee's prognosis, and hence treatment and care expenses, are less than certain (i.e., most cases involving future medical expenses), and yet appellants concede that the LIRC has "the power to make an order covering possible future medical expenses." Point denied.

The judgment of the LIRC is affirmed in its entirety.

SIMON and HOFF, JJ., concur.