Jess SMITH, Respondent,

v.

RICHARDSON BROTHERS ROOFING and Hartford Insurance Company, Appellants.

No. 23460.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 18, 2000.

Motion for Rehearing or Transfer Denied Oct. 6, 2000.

Edward M. Vokoun, Evans & Dixon, L.L.C., St. Louis, for appellant.

Rudy L. Veit, Darin J. Patterson, Carson & Coil, P.C., Jefferson City, for respondent.

ROBERT S. BARNEY, Chief Judge.

Jess W. Smith ("Claimant") was injured at work when several drums or "sticks" of asphalt, weighing ninety two pounds each,

fell off a pallet striking him across the back and knocking him down. The Administrative Law Judge ("ALJ") who heard the case determined that as a result of his accident Claimant was permanently and totally disabled. Accordingly, the ALJ awarded compensation and, *inter alia,* awarded past and future medical benefits. The Labor and Industrial Relations Commission ("Commission") affirmed and incorporated the award issued by the ALJ. Appellants, Richardson Bros. Roofing, the employer of Claimant, and Hartford Accident Indemnity Company, insurer for Richardson Bros. Roofing, now appeal the Commission's decision, raising three major points of error, discussed below. We affirm.

■■■ "The fundamental purpose of the Workers' Compensation Law is to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment." *Cochran v. Industrial Fuels & Res.,* 995 S.W.2d 489, 492 (Mo.App.1999). "The law is to be broadly and liberally interpreted, extending its benefits to the largest possible class. Questions as to the right of an employee to compensation are resolved in favor of the employee." *Id.*

■■■ The Commission "is charged not only with reviewing the record but, when appropriate, determining the credibility of witnesses and the weight to be given their testimony, resolving any conflicts in the evidence, and reaching its own conclusions independently of the ALJ's findings." *Id.* Where the Commission "attaches and incorporates the ALJ's award and decision, this court considers the findings and conclusions of the Commission as including the ALJ's award." *Id.*

■■■ In our review of an appeal of a workers' compensation claim, this Court engages in a two-step process. *Id.* at 494. First, we "examine the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award." *Cochran,* 995 S.W.2d at 494. If it does not, then the Commission's award must be reversed. *Id.* However, if there is competent and substantial evidence supporting the award, the court moves to the second step, where we view the evidence in the light most favorable to the award. *Id.* In doing so, we consider all the evidence in the record, including that which opposes or is unfavorable to the award and take into account the overall effect of all of the evidence and determine whether the award is against the overwhelming weight of the evidence. *Id.; see Avery v. City of Columbia,* 966 S.W.2d 315, 319–20 (Mo.App.1998).

■■■ We initially review Appellants' Point Two, which asserts that the Commission erred in dismissing Appellants' Amended Application for Review as untimely. While Appellants filed their Application for Review within twenty days of the ALJ's award, they attempted to file an Amended Application for Review thirty-seven days after the ALJ's award. We must decide whether the law in Missouri permits amendment of an Application for Review once twenty days have elapsed after the ALJ's award.

The ALJ made his Award on February 9, 1999, finding Claimant permanently and totally disabled. Appellants filed their Application for Review on March 1, 1999, and—following Claimant's response to the allegations—filed their Amended Application for Review on March 19, 1999. The amendment added claims of error not contained in the original application. The Commission cited section 287.480, RSMo Cum.Supp.1998, in holding that "[a]ny amendments to Applications for Review must be filed within the statutory 20 day time limit," and dismissed the Amended Application for Review.[1] Appellants contend that the Commission erred as a matter of law in dismissing their Amended

1. All statutory references are to RSMo Cum. Supp.1998, unless otherwise noted.

Application for Review because they fully complied with the procedure for appealing from a final award by an ALJ, as outlined in 8 CSR 20–3.030.[2] Appellants also cite to section 287.480 in support of their argument. Section 287.480.1 states, in pertinent part: "[i]f an application for review is made to the commission within twenty days from the date of the [ALJ's] award, the full commission . . . shall review the evidence . . . and shall make an award. . . ." They asseverate that both the Workers' Compensation Act and the Commission rules are silent with regard to a time period for *amending* an Application for Review. Therefore, they contend that since the original Application was timely filed, any amendments to the original filing should have been reviewed by the Commission. We disagree.

In *Morris v. Christian Bd. of Publ'n*, 943 S.W.2d 249 (Mo.App.1997), employee Morris filed his timely Application for Review and then sought to amend it by interlineation following a motion to dismiss filed by another party. *Id.* The attempt to amend came more than 20 days after the ALJ's award; the Commission refused to accept the amendment; the motion to dismiss was sustained; and the Eastern District of this Court affirmed. *Id.*

In *Smith v. Smiley Container Corp.*, 997 S.W.2d 126 (Mo.App.1999), it was the employer that sought to amend its Applica-

tion for Review. This Court noted the twenty day time limit imposed by section 287.480 and followed *Morris* in holding that the "Commission had no statutory authority to grant Employer leave to amend its application for review once twenty days elapsed after the [ALJ's] award." *Id.* at 131.

■ Despite Appellants' entreaties that we reconsider our holding in *Smith, supra,* we decline to do so. From our plain reading of section 287.480 and 8 CSR 20–3.030(1) and (3), we conclude that multiple applications for review or amendments to such applications outside of the twenty day time limit are not permitted. To hold otherwise would open the door to limitless amendments for an indeterminable period of time, a result that is contrary to the expeditious settlement of workers'. compensation claims. Point denied.

We now turn to Appellants' Point One. In consonance with their original Application for Review, Appellants generally assert that the Commission's decision—affirming the ALJ's award finding Claimant permanently and totally disabled from the date of his injury—was not supported by substantial and competent evidence, and was contrary to the overwhelming weight of the evidence and contrary to law. Appellants argue that certain physicians based their assessments of Claimant's disability primarily upon his subjective com-

2. The pertinent provisions of 8 CSR 20–3.030 are set out below:

 (1) Review – Appeal. Any interested party in a contested case may appeal from a final award, order or decision made by an [ALJ] of the Division of Workers' Compensation by making an application for review within twenty (20) days from the date of the award, order or decision with the commission as provided by section 287.480, RSMo. . . .

 . . . .

 (3) Applications and Briefs.
 (A) An applicant for review of any final award, order or decision of the [ALJ] shall state specifically in the application the reason the applicant believes the findings and conclusions of the [ALJ] on the controlling issues are not properly supported. It shall

not be sufficient merely to state that the decision of the [ALJ] on any particular issue is not supported by competent and substantial evidence.
 (B) If the applicant for review (known as the petitioner) desires to file a brief or memorandum of law in support of the application, it shall be indicated in the application. The petitioner's brief or memorandum of law shall be filed within thirty (30) days after the transmittal of the transcript of record. Parties to a claim who do not file an application for review may file reply briefs or memoranda of law within fifteen (15) days after receipt of the applicant's brief or memorandum of law. The commission shall have discretion, after notice to the parties, to extend or accelerate the briefing schedule.

plaints of pain, which were described as inconsistent with the clinical findings and periodically inappropriate in degree.

■ However, Appellants also seek to use their Point One to improperly expand their allegations of Commission error beyond those set out in their original Application for Review. They additionally contend:

1. That the Commission "Failed to Apply The Correct Standard of Review By Not Assessing Whether There Was Competent, Substantial Evidence Which Proved That [Claimant's] Injuries And Resulting Disability Were So Severe That Employers Would Not Reasonably Consider Him For Any Employment Under § 287.020.7 ...; Failed To Consider Whether An Employer Would Reasonably Consider The Claimant For Hire In Any Type Of Employment Given His Age, Education, Past Industrial Skills, Physical Condition, And Injury; And Also Failed To Consider What Affect Claimant's Unavailability Due To Imprisonment Had On His Employability."

2. That the Commission improperly affirmed the ALJ's award "where the Claimant failed to produce any vocational evidence that he was not employable except due to his criminal record and imprisonment."[3]

As noted in our discussion of the previous point of error, we need not and will not review these expanded allegations of Commission error not specifically brought before the Commission in Appellants' original Application for Review. *See supra.* Accordingly, issues not raised before the Commission will not be considered on appeal to this Court. *See Erickson v. Aaron's Auto. Prods., Inc.,* 967 S.W.2d 661, 664 (Mo.App.1998); *see also Duncan v. Springfield R–12 Sch. Dist.,* 897 S.W.2d 108, 115 (Mo.App.1995); *Cahall v. Riddle Trucking, Inc.,* 956 S.W.2d 315, 321 (Mo. App.1997). We determine, nevertheless, that the Commission's final award was supported by substantial and competent evidence and was not against the overwhelming weight of the evidence. *See Davis v. Research Med. Ctr.,* 903 S.W.2d 557, 571 (Mo.App.1995).

■ "Under Missouri law, a Workers' Compensation claimant alleging permanent disability must adduce medical evidence demonstrating with reasonable certainty that the disability is in fact permanent." *Cochran,* 995 S.W.2d at 497. " 'There is nothing talismanic about the phrase 'reasonable certainty.' The words a medical expert uses when testifying are important, not in themselves, but as a reflection of any doubts [one] may have about the permanence of the injury.' " *Id.* (quoting *P.M. v. Metromedia Steakhouses Co.,* 931 S.W.2d 846, 849 (Mo.App. 1996)). "Total disability means the inability to return to any reasonable employment." *Id.* "It does not require that the claimant be completely inactive or inert." *Id.* "The determination of whether [Claimant] was totally and permanently disabled was a question of fact for the Commission." *Id.* "The Commission does not have to make its decision only upon testimony from physicians, it can make its findings from the entire evidence." *Cochran,* 995 S.W.2d at 497.

■ We initially observe that Claimant testified that he had a ninth grade education but had not completed his GED. He stated that he could not score high enough on a preliminary exam to qualify for taking the GED exam. Further, he was 40 years old at the time of the hearing. He related that he was unable to sit in one position for any length of time and spent significant amounts of time lying down but changed positions often. He related that the pain interfered with his ability to concentrate and think and he felt he was unable to be employed in any occupation given his physical condition.

**3.** Evidently Claimant was imprisoned on drug charges at some point following his accident.

Additionally, we note Claimant's long and detailed history of both in-depth and cursory medical treatments by numerous physicians, commencing with an emergency room treatment at St. John's Regional Medical Center on November 16, 1992, and continuing for at least five years.

An MRI performed shortly after the accident demonstrated a "herniated nucleus pulposus at L4–L5 with an extruded fragment." Noting the failed conservative treatment of Claimant, Dr. Edward Colapinto, a neurosurgeon, performed surgery on April 19, 1993, and removed the disc herniation. Dr. Colapinto testified that Claimant "has chronic pain related to the injury that has rendered him disabled." He further related that "[t]he muscles on either side of his lower spine were in spasm so that, when one feels them with your hand, they're kind of stony hard because they're just in —— they're in spasm. And so I felt this reflected, you know, considerable pain that he was enduring." Dr. Colapinto also opined that Claimant had absence of knee jerk reflex, and very likely nerve damage injury to the L4 nerve root and that "the knee jerk reflex is absent means that there has been an injury to the nerve root." Dr. Colapinto further opined that "it seems unlikely [Claimant is] going to get much better, and he's probably going to need, you know, ongoing medical attention to deal with the pain." Dr. Colapinto also related that Claimant "was precluded from working by his injury."

Dr. David Scherr, an orthopedic surgeon with 37 years experience in his field, testified that Claimant's symptoms seem to have been caused directly by the injury which ruptured his L4/5 disc on the left. He related that due to the surgical procedure the persistence of Claimant's symptoms is probably due in large part to scarring. He related that scarring could constrict the nerves or squeeze the nerves in a similar manner as can two pieces of bone or a ruptured disc. He stated that if a nerve is squeezed, then its function is compromised; that is, the ability of that nerve to transmit impulses from the brain down to the muscles to make them move is compromised. Further, Dr. Scherr stated that a squeezed nerve often causes pain when there is no other cause for the pain coming into that nerve so that the victim of the squeezed nerve may have pain that would not be occurring if the nerves were not squeezed. Although he observed that the findings in certain tests may suggest an element of malingering, Dr. Scherr, nevertheless, opined that "the presence of extensive scar formation postoperatively demonstrated on two MRIs makes it probable that he, indeed, has disabling lumbar pain most of the time and left sciatica at least intermittently. These symptoms will be permanent." Dr. Scherr also acknowledged evaluating people for working purposes throughout his career, including evaluations performed for Workers' Compensation and for Social Security. He then noted his opinion in a previous report: "I therefore believe that [Claimant] is permanently and totally disabled for gainful employ"; and stated "I continue to believe that."

While Dr. Ted Lennard determined Claimant had impairment of 20% of his body as a whole, he, nevertheless, observed that Claimant's "functional limitations would include avoiding prolonged and repetitive bending, lifting greater than 20 lbs from the floor to the waist and the waist above the head, and walking greater than one block without a chance to rest. He will also need to change body positions at leisure."

Dr. David White testified that Claimant had an ongoing problem of chronic pain syndrome from his back, and that in turn caused gastral problems which were a side-effect of the medication for his pain. And, Dr. George Lathrop's diagnosis was that Claimant's "fundamental condition is that of status post laminectomy with discectomy with poor surgical results."

 In our review of the foregoing evidence, we have kept in mind that the

"Commission is the sole judge of the credibility of the witnesses." *Reese v. Gary & Roger Link, Inc.*, 5 S.W.3d 522, 525 (Mo. App.1999). "Additionally, the Commission has sole discretion to determine the weight given to expert opinions." *Id.* "[T]he extent and percent of disability is a finding of fact within the Commission's discretion and the Commission is not bound by the expert's exact percentages." *Jones v. Jefferson City Sch. Dist.*, 801 S.W.2d 486, 490 (Mo.App.1990). "The Commission is free to find a disability rating higher or lower than that expressed in medical testimony." *Id.* Hence, "'when medical theories conflict, deciding which to accept is an issue peculiarly for determination of the Labor and Industrial Relations Commission.'" *Grimes v. GAB Bus. Servs., Inc.*, 988 S.W.2d 636, 641 (Mo.App.1999)(quoting *Hawkins v. Emerson Elec. Co.*, 676 S.W.2d 872, 877 (Mo.App.1984)).

 "'Decisions concerning the weight to be given expert opinions lie within the Commission's sole discretion and cannot be reviewed by this court.'" *Cochran*, 995 S.W.2d at 494(quoting *Avery*, 966 S.W.2d at 320). "The Commission, as fact finder, has discretion to determine an expert's qualifications to testify on specific matters." *Id.* "It is within the province of the Commission to determine what weight it will accord expert testimony on medical causation." *Id.*

Reiterating, we are unable to conclude that the portion of the award finding Claimant permanently and totally disabled was against the overwhelming weight of the evidence. Since it was also supported by sufficient, competent and credible evidence we affirm the Commission's findings. *Davis*, 903 S.W.2d at 574. Point One is denied.

 In Appellants' Point Three, they challenge the Commission's finding affirming the award of the ALJ in his determination that Claimant's weekly compensation rate was $449.80, based on an average weekly wage of $875.35. They assert that Claimant was engaged only in "seasonal" employment and that the rate of compensation is based upon the "hourly wage times 200 divided by 52 weeks pursuant to section 287.250(5), RSMo 1991." This allegation of error was not timely raised in Appellants' Application for Review and need not be reviewed by this Court. However, we have gratuitously exercised our right of review of Appellants' point and find no manifest injustice or miscarriage of justice has resulted from the Commission's findings. Rule 84.13(c), Missouri Court Rules (2000); *see Decker v. National Accounts Payable Auditors*, 993 S.W.2d 518, 522 (Mo.App.1999).

 In our review, we first note that "a claimant has the burden of proving all of the material elements of the claim, and that includes sufficient proof for the Commission to determine the proper compensation rate." *Sanders v. St. Clair Corp.*, 943 S.W.2d 12, 18 (Mo.App.1997). Here, Claimant testified that he had been working for Richardson Bros. Roofing "[g]oing on just about two years I believe." On cross-examination, he acknowledged that he worked "seventy to eighty hours every week for Mr. Richardson." He also acknowledged that he worked for his employer for "Fifty weeks out of the year." Claimant stated his rate of pay was $10.51 an hour. He also related that he worked overtime and "got a lot of comp checks too." To the question, "But then after a while [the work] became seasonal?" he answered, "Not really. We pretty well worked – [The employer] got jobs in – out of the states where we could be working." In response to the question, "Well, you can't do roofing work when there's snow or ice or rain outside, can you?" Claimant responded, "Yes." He explained, "They had what they called goats, billy goats, that blow the snow off and dry it and you can lay it anyway." He also related that even in the event of "ice on top" of the roof, "[y]ou can dry it and do it – lay it

anyway" provided the ice was not falling from the sky.[4]

Mr. Mahlon Richardson, Claimant's employer's representative, testified that Claimant was being paid about "Ten dollars per hour" and in response to the question, "And how many hours a week did he work?," he answered, "Forty *and then some.*" (Emphasis added). In further testimony, Mr. Richardson acknowledged that he paid his workers overtime and that they "[m]ost usually," worked between 50 to 60 hours a week on the job on which Claimant was injured.

"This court defers to the commission on issues involving credibility of witnesses and the weight given to their testimony." *Decker*, 993 S.W.2d at 523. "On such questions, the reviewing court may not substitute its judgment on the evidence for that of the Commission." *Sanders*, 943 S.W.2d at 16. Thus "[i]nquiry on questions of fact is limited to a determination of whether the commission could have reasonably reached the result it did." *Decker*, 993 S.W.2d at 523. Adhering to these standards, we conclude that the Commission's findings were not clearly contrary to the overwhelming weight of the evidence, were supported by substantial and competent evidence and, in either event, did not rise to the level of manifest injustice or miscarriage of justice. *See id.*; *Sanders*, 943 S.W.2d at 16. Point denied.

The Commission's award is affirmed.

PREWITT, J., concurs.

CROW, J., concurs.

4. We observe that the Claimant's accident

occurred on November 15, 1992.