Mary Susan ELLIOTT, Respondent,

v.

**INDIANA WESTERN EXPRESS,**
Appellant.

No. 25600.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 29, 2003.

Bill W. Richardson, Sanders, Conkright & Warren, LLP, Overland Park, KS, for appellant.

John C. Banning, Reynolds, Gold & Grosser, P.C., Springfield, for respondent.

ROBERT S. BARNEY, Presiding Judge.

Indiana Western Express ("Employer") appeals the decision of the Labor and Industrial Relations Commission ("Commission") awarding Mary Elliott ("Employee") compensation under Chapter 287 of the Workers' Compensation Act for an occupational disease, specifically, left hand carpal tunnel syndrome. In its sole point on appeal, Employer maintains there is no medical evidence showing that Employee's work activities as a truck driver for Employer were a substantial factor in causing Employee's need for surgery on her left wrist.

■ Section 287.495 provides the standard of review for a workers' compensation case. It states in relevant part:

"The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the Commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the Commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

*Grime v. Altec Indus.,* 83 S.W.3d 581, 583 (Mo.App.2002) (quoting § 287.495).[1]

■ "The Commission is the sole judge of the credibility of the witnesses, and this [C]ourt will not substitute its interpretation of factual issues for that of the Commission even if it would have made a different determination." *Garibay v. Treasurer of Missouri,* 930 S.W.2d 57, 59 (Mo.App.1996) (footnote omitted). The Commission's choice of one medical opinion over another is binding on us unless the choice clearly results from an abuse of discretion. *Maxon v. Leggett & Platt,* 9 S.W.3d 725, 733 (Mo.App.2000).

■ "In cases in which a worker seeks compensation for carpal tunnel syndrome, he or she must submit a medical expert who can establish a probability that working conditions caused the disease, even if the disease was not an injury's sole cause." *Decker v. Square D Co.,* 974 S.W.2d 667, 669 (Mo.App.1998). "The evidence must establish a direct causal link between the worker's workplace or job duties and the injury-causing disease." *Id.*

1. In our review, we engage in a two-step process. *Seeley v. Anchor Fence Co.,* 96 S.W.3d 809, 814 (Mo.App.2002). We initially determine whether the whole record viewed in the light most favorable to the award of the Commission contains sufficient competent and substantial evidence to support its award. *Id.* at 814–15. " 'If we find that it does, then we make a determination as to whether the award is against the overwhelming weight of the evidence.' " *Id.* at 815 (quoting *Lorentz v. Missouri State Treasurer,* 72 S.W.3d 315, 318 (Mo.App.2002)). In this latter step, all the evidence in the record is considered, including that unfavorable to the award made by the Commission. *Id.; see Loyd v. Ozark Elec. Coop. Inc.,* 4 S.W.3d 579, 584 (Mo.App.1999).

"This Court's review of fact questions considers the evidence in the light most favorable to the findings of the Commission." *West v. Posten Constr. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991). The record shows that from December 1996 to July 1997, Employee worked for Employer as an over-the-road truck driver. She had a prior history of carpal tunnel syndrome in her right hand resulting from an earlier employment and had surgery on her right hand.[2] Notably, Employee testified that at the commencement of her duties with Employer she did not suffer left wrist problems.

Employee's job with Employer entailed her driving a large truck for long lengths of time. Typically this required Employee to hold her hands in a bent position on the vehicle's vibrating steering wheel for prolonged periods of time. Employee testified she first noticed numbness and pain in the left hand after about six months of driving for Employer. She testified that when she wasn't driving the truck she didn't have any trouble. She reported her problem to Employer, and Employer referred her to a company physician who advised her she had tendonitis, which should resolve on its own.

As previously related, by August 1997, Dr. Garrison found positive Tinel's and Phalen's signs in her left wrist and suggested surgery might be necessary. Employee was then evaluated by Dr. David Paff in September 1997. His testing was also positive for a diagnosis of right and left carpal tunnel syndrome, worse on the left, and left cubital tunnel syndrome. Dr. Paff observed that Employee "should have surgery on the left as well as the possibility of ulnar nerve transposition on the left." He also opined that he could not "say, based on a reasonable degree of medical certainty, that all of these problems are due to her work at Penmac/Fasco." We note "Penmac/Fasco" is the *former* employer of Employee.[3]

Employee quit her job with Employer in July 1997. She attended college briefly, worked as a real estate appraiser, and later formed her own company that specialized in final cleanup after construction. She testified that while she performed routine activities, she was not involved in hand intensive repetitive activity. She related that as "boss," others performed the heavy

---

2. Employee testified she was working for "[Penmac] Fasco" making small motors, when problems arose relating to her right hand. As best we discern from the record, Dr. C. Garrison performed surgery on her right hand.

In a follow-up examination on or about "8/26/97"—shortly after terminating her employment with the instant Employer—Dr. Garrison performed a follow-up examination, post-surgery for Employer's right hand. Dr. Garrison noted her "right hand is examined and everything has healed nicely.... She has excellent grip, range of motion and apparently does not have any problems here."

Then Dr. Garrison examined Employee's *left* hand and noted "she does have a positive Tinel's and Phalen's of the left hand." Dr. Garrison observed that Employee "is having difficulty with *her work place at this time* [i.e., Employer] and I have basically told her I am available to her if she needs any further surgery, which I suspect she will. She is going to contact me if it progresses to that." (Emphasis added.)

3. Dr. Paff examined Employee again on or about July 17, 2000. He wrote after having examined Employee that she had "positive Phalen's on the left in the first to third digits in 15 seconds, negative on the right. She has positive Tinel's at the elbow and wrist on the left, negative on the right." Dr. Paff observed that Employee had "developed bilateral carpal tunnel syndrome" and that "the right is related to her employment at Fasco, though the left is not clearly related to her employment." In our review we determine it is not clear which "employment" Dr. Paff was referring to when discussing her left hand.

work involved with cleanup operations. While she testified she continued having problems with her left wrist, she delayed doing anything about her left wrist problems because of the lack of insurance for treatment.

Employee filed a workers' compensation claim in August 1998 alleging carpal tunnel syndrome of her left wrist due to driving eighteen wheel trucks for Employer. She continued working in her cleanup business, however.

In late June 2001, Employee was evaluated by Dr. Rodney Geter. Dr. Geter's records reflect that he was given a history of symptoms in the left hand for the past four years, which also referred to problems arising from truck driving. Dr. Geter recommended left carpal tunnel surgery that was eventually performed in August 2001.

In its argument, Employer makes much of Dr. Geter's testimony, wherein he observed that Dr. Paff had opined in his July 17, 2000, report that "he could not relate her left carpal tunnel syndrome to her employment," see footnote 3 above, and that he, Dr. Geter, "yielded to Dr. Paff's evaluation." Dr. Geter then stated he couldn't express an opinion as to what caused her need for surgery.

Nevertheless, in his deposition testimony, Dr. Geter explained that in his June 2001 examination of Employee he had recommended a carpal tunnel release. Furthermore, when asked if he believed that Employee's hand activities while driving the eighteen wheel vehicle was a substantial cause of Employee's left carpal tunnel, Dr. Geter answered, "There was documentation in 1997 that she did have symptoms of left carpal tunnel syndrome even though they were mild, and, so, yes, I would think it would be the same causation."

Additionally, when questioned whether it was consistent with carpal tunnel syndrome that it progressively worsens over time with activity, Dr. Geter responded, "Yes." Nevertheless, when counsel inquired whether the doctor believed that there was "most likely or more probable than not" some additional aggravation of the hand from Employee's ongoing hand activities from 1997 until his examination in June 2001, Dr. Geter answered, "I would have no way of knowing that with my history."

Furthermore when asked if he believed Employee has had carpal tunnel syndrome since 1997, Dr. Geter answered, "I think that's been pretty well documented that she has had symptoms of carpal tunnel, and she had a positive wrist flexion test in 1997." And, when asked if, regardless of the cause, the carpal tunnel syndrome occurred in 1997 or before, Dr. Geter answered, "That would be my opinion." Lastly, when asked if it was his belief that the truck driving activities in 1997 related to him by Employee were the cause of the carpal tunnel syndrome, Dr. Geter responded, "By history that implication would be there."

■■■ " 'It is within the province of the Commission to determine what weight it will accord expert testimony on medical causation.' " *Smith v. Richardson Bros. Roofing,* 32 S.W.3d 568, 575 (Mo.App.2000) (quoting *Cochran v. Indus. Fuels & Res., Inc.,* 995 S.W.2d 489, 494 (Mo.App.1999)). Medical opinion testimony, as here, "which speaks in terms of likelihood rather than certainty, is admissible and probative." *Dean v. St. Luke's Hosp.,* 936 S.W.2d 601, 605 (Mo.App.1997). "[S]uch testimony, particularly when combined with other credible evidence of a nonmedical character, can be enough to support an award...." *Id.; see Miller v. Penmac Pers. Servs., Inc.,* 68 S.W.3d 574, 580 (Mo.

App.2002) (quoting *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 600 (Mo. banc 1994)) (" 'Cautious or indefinite expert testimony on medical causation combined with lay testimony can provide sufficient competent evidence to support causation of injury.' ").

 Here, Employee specifically testified that she began employment with Employer in December of 1996 operating eighteen wheel vehicles. She testified that the steering wheel of the vehicles she drove were typically "24 inches" and that she was small framed; that while driving "up and down the mountains all night long," she had to do a lot of shifting with her right hand and "you would have to hang onto the steering wheel left-handed." She further related that "your arm is always bent," and that the "vibration from the steering wheel is just nonstop. It doesn't make any difference if you have a brand new tractor-trailer or if you have one that's thirty years old."

Employee also testified that she had never seen a physician concerning her left wrist prior to working for Employer and that she began having problems with her left wrist "approximately May of 1997" after working with Employer "close to six months."

Dr. Garrison's medical report set out that Employee was having difficulty with "her work place at this time," shortly after terminating her employment with Employer in July 1997. Furthermore, we discern from Dr. Paff's July 2000 report that she had "positive Phalen's on the left ... [and] positive Tinel's at the elbow and wrist on the left...." This was followed by Dr. Geter's observation that Employee had symptoms of left carpal tunnel in 1997 and that the driving of eighteen wheel vehicles "would be the same causation," and that "[b]y history that implication would be there."

In our review, our inquiry on questions of fact is limited to a determination of whether the Commission could have reasonably reached the result it did. *Smith*, 32 S.W.3d at 576. In doing so, we do not substitute our judgment on issues of fact for that of the Commission even if we would have made a different initial conclusion. *Gordon v. Tri–State Motor Transit Co.*, 908 S.W.2d 849, 852 (Mo.App. 1995); *Garibay*, 930 S.W.2d at 59. Adhering to these standards, we conclude that the Commission's finding that Employee's impairment relating to her left carpal tunnel syndrome arose out of and in the course of her employment with Employer is not clearly contrary to the overwhelming weight of the evidence, and was supported by substantial and competent evidence. *See Erickson v. Aaron's Auto. Prods., Inc.*, 967 S.W.2d 661, 663 (Mo.App.1998).

The Commission's award is affirmed.

PREWITT, J. and GARRISON, J., concur.