MOSSMAN et al.

v.

ST. JOSEPH LEAD CO. et al.

No. 43630.

Supreme Court of Missouri.

Division No. 2.

Feb. 8, 1954.

Rehearing Denied March 8, 1954.

Smith, Harris & Hanke, Harold C. Hanke, St. Louis, for appellants.

W. Oliver Rasch, John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondent St. Joseph Lead Co.

ELLISON, Judge.

This is an appeal from a final award of the Department of Labor and Industrial Relations, Division of Workmen's Compensation, Section 286.110 RSMo 1949, V. A.M.S., denying the appellants compensation under Sec. 287.490. They appealed to the circuit court with the same result. Again appealing, the St. Louis Court of Appeals transferred the case here. The appellant-claimants are Virginia Mossman and her infant son Terry Lyn Mossman, about one year old at the time of the death of his maternal grandfather Emil Gramm, on July 25, 1950, in an accident occurring in the course of his employment by the respondent St. Joseph Lead Company. His daughter, Mrs. Mossman and her infant son brought this proceeding against the respondent Lead Company under the Compensation Act on the theory that they were partial dependents of her father. The above tribunals held they were not.

She was and still is married to the child's father, Floyd Mossman, and they lived in a separate home in Farmington for which, up to September, 1950, they paid $10 per week rent. He was 22 years old when her father died and was able bodied, healthy and independently employed. His main occupation was as a painter, but he also worked as a gas station attendant, truck driver, factory worker and trapper. On the other hand, Mrs. Mossman's father, Emil Gramm, lived at Desloge eight miles away where he worked for the respondent Lead Company, and had boarded there with a Maness family for seven years in a house he owned or on which, at least, he was making payments.

Before going further into the facts, the reason for the transfer of this case by the St. Louis Court of Appeals to this court should be explained. Section 287.220, subd. 1(1) RSMo 1949, V.A.M.S. provides that every employer "shall pay into the *second injury fund* hereby created for every fatal injury by accident, on account of which death benefits would be payable under this chapter, but sustained by an employee having no dependents as defined by section 287.240; a lump sum of five hundred dollars." Sec. 287.240(4) defines the word "dependent" as meaning "a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of the injury." The foregoing $500 payment was duly made.

The respondent employer St. Joseph Lead Company filed application to make the State Treasurer, custodian of said second injury fund pursuant to Sec. 287.220, subd. 1(1), a party to the suit and he entered his appearance accordingly. The Lead Company contended that since the State Treasurer is a state officer under Art. IV, Sec. 15, Const.1945, V.A.M.S., this court and not the St. Louis Court of Appeals has appellate jurisdiction of the appeal under Art. V, Sec. 3, Const.1945. On that basis the St. Louis Court of Appeals ordered the cause transferred here. Mo.App., 254 S.W. 2d 241.

Reverting to the question whether the appellants Mrs. Mossman and her infant son Terry Lyn were partial dependents of her deceased father Emil Gramm when and before he died on July 25, 1950. There was some evidence that she and her husband were partly self-supporting though she had received numerous benefactions from her father before his death. She had then been married to her husband nearly two years—since September 4, 1949. Their son Terry Lyn was born on July 10, 1949, slightly over a year before his grandfather Gramm's death on July 25, 1950. His father, Floyd Mossman, then was 22 years old. His mother was nearly 20.

They lived in three furnished rooms at Farmington for which they paid $10 per week. During the winter of 1949–50 they were four weeks behind in the rent. In the middle of January, 1950, Mrs. Mossman be-

gan to work at the Rice-Stix shirt factory and continued until shortly before Christmas. Appellants' brief states her total net earnings were about $650. During the same year her husband, Floyd Mossman, worked as a painter for his own father at $1.50 per hour, but was mostly self employed. His records showed he made $1021 from July 25, 1949 to July 25, 1950, the year before the death of his father-in-law Gramm. But he did not work during the winter months, November, December, January and February, when he was not painting or trapping.

He prepared a table showing his earnings during the year ending July 25, 1950, after which he could not claim contributions from his deceased father-in-law's estate as earnings. This table showed, as near as we can make out, the following:

| | |
|---|---|
| July, 1949 | $ 60.00 |
| August, 1949 | 218.00 |
| September, 1949 | 251.50 |
| October, 1949 | 83.50 |
| November, 1949, painting at hospital | 210.00 |
| December, 1949, trapping furs | 214.00 |
| May, 1950, painting at hospital | 210.00 |
| June, 1950 | 202.00 |
| July, 1950, before July 25 | 200.00 |
| Total earnings | $1649.00 |

| Less expenses: | | |
|---|---|---|
| for traps | $22.50 | |
| for gasoline | 2.50 | |
| for brushes | 35.00 | |
| for paint | 20.00 | 80.00 |

| | |
|---|---|
| Net earnings | $1569.00 |

In addition Mrs. Mossman earned $650 in 1950, which, with her husband's net earnings of $1569 totaled $2219. The appellant Mrs. Mossman testified that during the year preceding the death of her father Mr. Gramm he gave her groceries or money to buy them, of the value of $50 per month, but the record does not appear to support that contention as to the amount of his contributions. Appellants' counsel contend that during the year preceding his death Mr. Gramm's income was $3281.99, plus money derived in trafficking in scrap iron, and $20 per month rent from his sister, Mrs. Maness and her family. The appellant Mrs. Mossman also offered to prove she obtained appropriations for her maintenance and support from her own minor child's support in the total sum of $1850.

She contends Mr. Gramm, whose expenses were less than her's, could well afford to contribute to the support of herself and her child, which she says he did in the sum of $882.84. On that point she cites Whittington v. Gamble Const. Co., Mo. App., 86 S.W.2d 331, 333(2), which says that while the decedent there was under no legal obligation to support his own daughter, yet if she was in fact actually dependent in whole or in part she came within the purview of the Workmen's Compensation Act.

In this case it is true that the decedent's income here exceeded $3281.99. But the income of his daughter during the year in question was $650 and her able bodied husband's was $1569.00, totaling $2219.00 in addition to which her father was voluntarily contributing to their support. The final award of the Commission in this case denied additional compensation, and the circuit court affirmed that decision. The fact that her father may have made gifts of money and groceries to her did not, and does not necessarily require a finding that the claimants were actually dependent. Scott v. Wheelock Bros., Inc., 357 Mo. 480, 487(3), 209 S.W.2d 149, 153(5); Kemmerling v. Karl Koch Erecting Co., 338 Mo. 252, 255-6(2), 89 S.W.2d 674, 675; Ashwell v. U. S. Seed Co., Mo. App., 167 S.W.2d 950, 952(1, 2, 3).

In view of the testimony and the conclusions reached by both the Commission and the circuit court, we think the judgment should be affirmed.

All concur.