**Geneva HENLEY, deceased, Employee.**

**Linda Tate, Dana Yeary, Ellie Yeary and Jannah Yeary, Claimants–Respondents,**

v.

**TAN CO., INC., d/b/a Silver Fountain Inn, Employer–Appellant,**

**Missouri Retailers Ins. Trust, Insurer,**

**Treasurer of the State of Missouri, as Custodian of Second Injury Fund, Respondent.**

**No. 25872.**

Missouri Court of Appeals, Southern District, Division One.

June 21, 2004.

Motion for Rehearing or Transfer to Supreme Court Overruled July 13, 2004

Application for Transfer Denied Aug. 24, 2004.

Shelley A. Wilson, Simon & Early, P.C., St. Louis, for appellant.

Bradshaw Smith, Kimberling City, for respondent.

PHILLIP R. GARRISON, Judge.

In this workers' compensation case, Silver Fountain Inn ("Employer") appeals the decision of the Labor and Industrial Relations Commission (the "Commission") to award death benefits under Section 287.240 [1] to Geneva Henley's ("Employee") granddaughters, Ellie Yeary, Dana Yeary, and Jannah Yeary (collectively "Claimants"). At issue is whether or not Employee's grandchildren were actually de-

pendent upon their grandmother's wages at the time of her work-related death. The judgment of the Commission is affirmed.

In the summer of 1998, Employee, a sixty-four-year-old widow, sold her home in Kansas City, Missouri and moved to Branson, Missouri to live with her recently-divorced daughter, Linda Tate ("Tate"), and Claimants. Employee and Tate purchased a five-bedroom home together in January 1999. In purchasing the home, Employee made the down payment of $45,000 and the property was conveyed to both she and Tate.[2] At the time that Employee and Tate moved into the home, they mutually agreed to a division of the living expenses and other household obligations. Under their agreement, Tate was responsible for the monthly house payment, the electric bill, and one of the phone lines; Employee was responsible for the trash service, lawn service, water bill, one phone line, groceries, and all home maintenance and repairs. Additionally, Employee paid for incidentals related to Claimants, such as orthodontics, school supplies, make-up, and clothing.

In early 1999, when Employee and Tate moved into their new home, Employee's income consisted of $944 per month in Social Security benefits. Subsequently, in April of 1999, Employee obtained a part-time job with Christian Action Ministry, where she worked three full days per week earning $7 per hour. In April of 2000, Employee accepted additional employment as a front desk clerk at Employer's motel. While working for Employer, Employee earned $7 per hour and worked a five-hour

---

1.  All statutory references are to RSMo 2000 unless otherwise specified.

2.  According to Tate, Employee intended the $45,000 down payment to serve as an advance on Tate's inheritance. The remaining

$45,000 from the sale of Employee's previous home was placed into a money market account for the benefit of Tate's brother, Ron Henley, Employee's only other child.

shift, two or three nights a week.[3] During her shift on April 26, 2000, Employee was shot and killed as the result of an armed robbery.

Following Employee's death, Tate filed a claim on behalf of herself and Claimants under Section 287.240 with the Division of Workers' Compensation, seeking benefits as dependents of Employee. Specifically, the claim alleged that Tate and Claimants were each 40%–50% dependent on Employee's wages. Following a hearing held September 17, 2002, the Administrative Law Judge ("ALJ") concluded that, at the time of her death, Claimants were "partial dependents and depended upon the entire wages earned by [Employee]." Based on this finding, the ALJ awarded Claimants $140 per week. Tate's claim for benefits was denied. Adopting and incorporating the conclusions and rulings of the ALJ, the Commission affirmed the award and decision.[4] Employer and Insurer appeal the final award allowing compensation.

■ On appeal, Employer alleges three points of Commission error.[5] In its first point on appeal, Employer argues that under Section 287.240.4, Claimants were not actually dependent on Employee, but instead were totally financially dependent on Tate, therefore they should not receive benefits under the statute. Second, Employer maintains that any support given to Claimants by Employee came from other independent financial resources and not from Employee's wages. Third, Employer asserts that the Commission improperly considered "emotional support" in determining Claimants dependency. As Employer's points are related, we shall consider them together.

■ On appellate review, a court must examine the whole record to determine if the Commission's award is supported by competent and substantial evidence. *Hampton* at 222–223. In reviewing whether awards of the Commission are against the overwhelming weight of the evidence, the power of the court does not extend to reweighing the evidence. *Id.* Instead, the appellate court must determine whether the Commission could have reasonably made its findings and reached its result upon consideration of all of the evidence before it. *Totten v. Treasurer of State,* 116 S.W.3d 624, 629 (Mo.App. E.D.2003).

■ Additionally, "findings of fact made by the [C]ommission within its powers shall be conclusive and binding." Section 287.495.1. Thus, we defer to the Commission on issues concerning credibility and the weight to be given conflicting evidence. *Totten* at 627. However, we independently review questions of law without deference to the Commission's findings. *Id.*

---

**3.** Employee began working for Employer in early April and received her first and only paycheck in the amount of $203 from Employer for the two-week period ending April 21, 2000.

**4.** When the Commission affirms or adopts the findings of an ALJ, the decision and findings of the ALJ are reviewed as adopted by the Commission. *Hughey v. Chrysler Corp.,* 34 S.W.3d 845, 846 (Mo.App. E.D.2000). Additionally, we note that Commission Member Ken Legan dissented from the Commission's opinion.

**5.** Claimants assert that Employer's failure to cite the appropriate standard of review warrants "prefunctury dismissal" of this appeal. While we note that Employer indeed cites to outdated authority and neglects to request the appropriate standard of review outlined in *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–223 (Mo. banc 2003), we exercise our discretion to address the merits of Employer's appeal.

■ The purpose of the Workers' Compensation Act is to provide a method of compensation for injuries sustained by employees through accidents arising out of and in the course of employment, and to place the burden of such losses on the industry rather than the injured employee and their family. *Farmer–Cummings v. Future Foam, Inc.,* 44 S.W.3d 830, 835 (Mo.App. W.D.2001). Although a claimant bears the burden of proving the elements of his claim to a "reasonable probability," it is well-settled that "[t]he Workers' Compensation Law should be interpreted in a liberal manner in favor of the employee. Questions regarding the right of the employee to benefits must be resolved in the injured employee's favor." *Avery v. City of Columbia,* 966 S.W.2d 315, 320 (Mo.App. W.D.1998).

Pursuant to Section 287.240 of the Workers' Compensation Law, "dependents" of a deceased employee are entitled to certain death benefits and compensation:

(4) The word "dependent" as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his or her wages at the time of injury. The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee, . . .

. . . .

(b) A natural, posthumous, or adopted child or children, whether legitimate or illegitimate, under the age of eighteen years. . . . In all other cases questions of total or partial dependency shall be determined in accordance with the facts at the time of the inju-

ry, and in such other cases if there is more than one person wholly dependent the death benefit shall be divided equally among them.

Section 287.240(4)(b). This section creates two classes of dependents: the first consisting of relatives by blood or marriage who are in fact actually dependent upon the wages of the deceased employee for full or partial support, and the second consisting of those who are conclusively presumed to be totally dependent. Section 287.240.

■ Where, as here, Claimants are not among those statutorily classified as "conclusively presumed to be totally dependent," Claimants have the burden of proving that (1) they were related to Employee by blood or marriage and (2) they were actually dependent for support, in whole or in part, upon Employee's wages at the time of her injury.[6] Section 287.240; *See Phillips v. Air Reduction Sales Co.,* 337 Mo. 587, 85 S.W.2d 551, 556 (1935).

■ The question of actual dependency is a question of fact to be determined in accordance with the facts at the time of the employee's injury. *Ricks v. H.K. Porter, Inc.,* 439 S.W.2d 164, 167 (Mo.1969); *See Ferguson v. Hood,* 541 S.W.2d 19, 22 (Mo.App.1976). The word "dependent" ordinarily means in "need of aid or support," "not self-sustaining." *Dykes v. Thornton,* 282 S.W.2d 451, 454 (Mo.1955). While a "partial dependent" is one who has some means, but not sufficient means for his support, a "total dependent" is one who has no means whatever to support himself. *Id.* "Dependence within the meaning of the Workmens' Compensation Law does not mean absolute dependency for the necessities of life, but rather that the claimed

---

**6.** The parties agree that Claimants meet the first criteria of being related to Employee by blood or marriage. The issue here is limited to Claimants' actual dependency on Employees's wages.

dependent looked to and relied upon the contributions of the employee, in whole or in part, as a means of supporting and maintaining himself." *Craig v. Calvert,* 572 S.W.2d 235, 237 (Mo.App.1978) (*quoting Dykes* at 454). It is not necessary to show that the employee was "legally liable" for the support of the claimant. *Stillwell v. Universal Const. Co.,* 922 S.W.2d 448, 453 (Mo.App. W.D.1996).

Under our standard of review, the record below contains competent and substantial evidence upon which the Commission could base its award, and clearly this finding is not against the overwhelming weight of the evidence. The evidence was uncontradicted that Employee contributed substantially to the household both in terms of money and services, and that Claimants were at least partially dependent upon Employee's wages for their support.

During the fifteen months that Employee resided with Tate and Claimants, she had three bank accounts: the money market account, the grocery account, and a personal checking account. Employee deposited her monthly $944 social security check into the money market account and also paid for "Ellie['s] class ring," "Jannah's braces," credit card bills, doctor bills, church donations, and lawn services from this account. Every month Employee would deposit $500 into the second account, which was referred to as "the grocery account." If the monthly grocery expenditures exceeded $500, she would add additional funds to this account from either the money market account or her personal checking account. While both Tate and Employee wrote checks out of the grocery account, Tate testified that if she personally purchased items at the grocery store, Employee would reimburse her for her expenses. Employee's third bank account was a personal checking account into which she deposited all of her wages

from Christian Action Ministries and, presumably, would have deposited her wages from Employer. An examination of the expenditures from Employee's personal checking account reveals that she used this account to pay for household bills such as trash services and newspaper subscriptions. Additionally, Employee's personal checkbook contains numerous notations detailing purchases related to Claimants, for example, "[for] Dana and Jannah," payments for "Jannah's braces," and "Ellie's transmission." According to Tate's conservative estimates, Employee contributed over $62,000 toward household expenses and Claimants' support, an amount well in excess of her yearly income. The evidence showed a well-established pattern of the sharing of household expenses between Tate, Claimants, and Employee during the fifteen months prior to her death.

Employer argues that Claimants were totally dependent on Tate for support and, had Employee not resided with them, Tate "would have lived as she always had, providing shelter and support" for her daughters. The problem with that statement is that we determine whether Claimants were dependent on Employee based on the situation at the time of her death. *See* § 287.240. We are simply not concerned with Tate's previous ability to care for her children without Employee's aid or even her ability to care for them currently. The utmost concern is the level of support at the time of Employee's death in April of 2000.

Further, it is important to note that this case is distinguishable from *Mossman v. St. Joseph Lead Co.,* 265 S.W.2d 335 (Mo. 1954). In *Mossman,* the claimants were the deceased employee's adult daughter and infant son. *Id.* The Commission denied the claim for benefits, because not only did the daughter not reside with the deceased employee, but also because she

was married to an able-bodied man. *Id.* at 337. In that case, the only support she had been receiving from her father at the time of his work-related death was a monthly contribution of $50 in grocery money. *Id.* In the instance case, Employee was acting as an important member of the family unit in which Claimants lived. Tate testified that the household operated as a "partnership" and that Employee and she were raising the children together. They had detailed discussions regarding which party would claim Claimants on their income tax return. The fact that Tate claimed Claimants as dependents on her tax return is not determinative here. They had a specific division of financial responsibility and Employee made regular and substantial contributions to Claimants' support that was certainly more than mere gifts from a caring grandparent. Claimants' "need or dependency [on Employee's wages] is obviously a reasonable inference which could be drawn from the evidence presented." *Craig* at 237. Additionally, though Employer complains that the Commission improperly considered "emotional support" in its award, we find that though the Commission did indeed reference such "emotional support," it did not actually base its award on any such consideration. There was substantial evidence that Claimants were at least in part dependent for support on Employee's wages at the time of her death.

■ On review we are only required to find whether the Commission could have reasonably made its findings and reached its result upon its consideration of all the evidence before it. *Kucera v. Division of Employment Sec.,* 109 S.W.3d 208, 209–10 (Mo.App. E.D.2003). We examine the whole record to determine the issue of reasonableness, not to examine the amount of unfavorable evidence. *Id.* at 210. "The Commission is the sole judge of the credibility of the witnesses, and this [C]ourt will not substitute its interpretation of factual issues for that of the Commission even if it would have made a different determination." *Elliott v. Indiana Western Express,* 118 S.W.3d 297, 299 (Mo.App. S.D.2003). Adhering to these standards, we have reviewed the record, and find that the Commission's award is consistent with the applicable legal standard and is supported by competent and substantial evidence.

The award of the Commission is affirmed.

BARNEY, P.J., and PREWITT, J., concur.