Glenda FITZWATER, Appellant,

v.

DEPARTMENT OF PUBLIC SAFETY and Missouri Veterans Home, Respondents,

Treasurer of the State of Missouri–Custodian of the Second Injury Fund, Respondent.

No. WD 65857.

Missouri Court of Appeals,
Western District.

July 25, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 2006.

Mark Edward Kelly, Liberty, MO, for Appellant.

Carolyn Biersmith McCarthy, Asst. Attorney General, Kansas City, MO, for Respondents Dept. of Public Safety and Missouri Veteran's Home.

Jeanne Sue Velders, Asst. Attorney General, Jefferson City, MO, for Respondent Treasurer of MO–Custodian 2nd Injury Fund.

Before THOMAS H. NEWTON, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

PER CURIAM.

The Missouri Labor and Industrial Relations Commission awarded Glenda Fitzwater workers' compensation benefits for permanent total disability. The Commission awarded benefits for some future medical expenses, but not others. Fitzwater appeals. She claims that the limitation on her future medical expenses is against the weight of the evidence. We affirm the Commission's judgment.

## Factual and Procedural Background

On February 9, 2001, Glenda Fitzwater was injured at her job with the Missouri Veterans' Home in Cameron (Employer), where she worked as a baker. Ms. Fitzwater's ankle became entangled in an electrical cord, which caused her to fall and injure her left elbow, knee, and ankle. She was taken to the Cameron Community Hospital emergency room, where she was treated for fractured bones in her ankle. At the time of her injury, Ms. Fitzwater was fifty-three years old and had been suffering with diabetes for more than thirty years.

The hospital referred Ms. Fitzwater to Dr. Gregory Barnhill, an orthopedic surgeon, for follow-up treatment of her injuries. Dr. Barnhill took Ms. Fitzwater off work initially for approximately eight weeks. He treated Ms. Fitzwater over a period of months for pain in her left lower back and hip, pain in her ankle, and swelling in her foot and leg. Dr. Barnhill concluded that the tenderness in her back had developed "probably as the result of an altered gait pattern" due to her broken ankle. Dr. Barnhill prescribed various therapies for her back pain over the next few months with minimal results. On Dr. Barnhill's advice, Ms. Fitzwater was off work again from July until November. She returned to work part time in November, gradually increasing to full time on February 1, 2002. She continued to suffer back pain and swelling in her foot throughout this time period.

Dr. Barnhill saw Ms. Fitzwater for the last time on February 26, 2002. He reported at that time that she was having difficulties with the ankle fracture as well as back pain. Ms. Fitzwater was still working full-time. His reports indicate that Ms. Fitzwater had not controlled her diabetes well and that she had decreased sensation of the foot. He released her from his treatment, but encouraged her to have her diabetic condition looked at closely.

Three months later, on May 14, Ms. Fitzwater sought treatment from her personal physician, Dr. Janice Goddard, for pain and swelling in her left foot. Despite Dr. Goddard's attempts to treat the foot, the redness, pain, and swelling continued. Dr. Goddard took her off work intermittently during this time period. Her last day at work was June 13, 2002.

The next day, June 14, Ms. Fitzwater was admitted to North Kansas City Hospital for treatment of pain and swelling in her foot. Dr. Karl Stark, a vascular surgeon, treated Ms. Fitzwater while she was in the hospital. Dr. Stark diagnosed Ms. Fitzwater with "Charcot's joint"[1] in her foot and prescribed a Cam walker for her.[2] Dr. Stark concluded that the Charcot's joint (which is associated with diabetes) was caused by the work-related injury to her ankle. He reported that the ankle fracture "shifted and off loaded her foot in a different direction," which developed into Charcot's joint in her foot. At a follow-up appointment, Dr. Stark found that use of the Cam walker had reduced the swelling and tenderness in her foot. She continued under his care for approximately six more months until she began seeing Dr. Robert Haas, an orthopedist, for treatment of

1. Charcot's joint is a "[c]hronic progressive degeneration of the stress-bearing action of a joint (i.e., ankles)," and is associated with diabetes. Diana W. Guthrie, R.N., Ph.D. & Richard A. Guthrie, M.D., THE DIABETES SOURCEBOOK, *found at* http://www.webmd.com/content/pages/1/1667—50207.htm.

2. A Cam walker is a walking boot "designed to enhance mobility and/or serve as a cast replacement for sprains, strains, and some types of fractures from the mid-tibia or fibula (middle of the lower leg) to the mid-foot area." *Why Use a Walking Boot/Cam Walker?*, *http://www.ankleshop.com/boots.htm.*

Charcot's joint in January 2003. Dr. Haas diagnosed insulin dependent diabetes mellitus, peripheral neuropathy secondary to diabetes mellitus, Charcot's joint left foot, and history of osteomyelitis in the left foot. He reported, in December 2003, that she was no longer able to work because of problems related to her left foot. When Dr. Haas saw Ms. Fitzwater on January 13, 2004, he reported that her foot had stabilized, but that she continued to have swelling. He advised her to elevate her foot periodically throughout the day and continue using the Cam walker.

Ms. Fitzwater had two MRIs of her back following the ankle injury. In November 2002, Dr. Goddard sent Ms. Fitzwater for an MRI due to her continued lower back pain. The MRI showed disc desiccation (extreme dryness) and annular bulging (bulging shaped like a ring) in her vertebrae. A year later, Employer sent Ms. Fitzwater to Dr. James Zarr for evaluation and treatment of her lower back. He ordered an MRI, which revealed annular bulging and disc herniation in her vertebrae.

On August 30, 2004, the Administrative Law Judge conducted a hearing on Ms. Fitzwater's claim for workers' compensation benefits. The medical records as well as the file from Ms. Fitzwater's earlier hearing for temporary benefits were admitted as evidence. Ms. Fitzwater testified that her back pain and foot problems (swelling, pain) persist even though she is no longer working. After the foot injury, she said, she had become unable to work due to the injury and the resulting back pain. Vocational rehabilitation expert Terry Cordray testified that no employer could be expected to hire Ms. Fitzwater due her physical restrictions resulting from the foot injury.

Ms. Fitzwater also introduced a medical report and deposition from Dr. P. Brent Koprivica, who conducted an independent examination of her on March 2, 2004. Dr. Koprivica acknowledged that her pre-existing diabetic condition resulted in some disability. Dr. Koprovica opined, however, that the February 9, 2001, injury alone was sufficient to render her permanently and totally disabled. Dr. Koprivica noted that her ankle fracture had developed into "Charcot's joint" of the foot and that this then caused her to develop low back pain from degenerative disc disease, which resulted in disc herniation. He advised that she would require future medical treatment attributable to the February 9, 2001, injury. This included medication to manage the chronic pain in her lower back and foot, attendant nursing care, an electric cart for gait assisted purposes, and alterations to her home to make it wheelchair accessible.

The Administrative Law Judge found permanent, total disability as a result of the work-related foot injury, but awarded no future medical expenses. Ms. Fitzwater appealed to the Labor and Industrial Relations Commission. The Commission agreed that Ms. Fitzwater was permanently and totally disabled as a result of the injuries she suffered on the job and awarded benefits for permanent total disability. The Commission went beyond the award of the administrative law judge and awarded future medical expenses for pain medication and a Cam walker. The Commission denied future benefits for attendant nursing care, home modifications, and an electric cart, believing that all such expenses, should they become necessary, would be due solely to the steady progression of her pre-existing uncontrolled diabetes and its complications.

Ms. Fitzwater appeals.

### Standard of Review

■ Our review of this case is governed

by section 287.495, RSMo 2000,[3] under which the decision will be affirmed unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or there is insufficient evidence in the record to warrant the making of the award. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003). "[I]n the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding" on appeal. § 287.495.1.

■ On a claim that an award is against the weight of the evidence, we examine the evidence in the context of the whole record to determine whether it is supported by competent and substantial evidence. *Hampton,* 121 S.W.3d at 222–23. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence. *Id.* at 223. We need not view the evidence and its inferences in the light most favorable to the award. *Id.* Rather, we must determine whether the Commission reasonably could have made its findings and reached its result based upon all of the evidence before it. *Totten v. Treasurer of State,* 116 S.W.3d 624, 629 (Mo.App.2003).

### Argument

■ Ms. Fitzwater argues that the Commission's decision to limit her future medical benefits to pain medication and replacement Cam walkers and to deny benefits for other future medical expenses was against the weight of the evidence.

The Commission awarded Ms. Fitzwater future medical benefits for "replacement Cam walkers or repairs as needed" and "ongoing pain relief medications as may be prescribed for pain relief of her low back."

The Commission denied future medical benefits for attendant or nursing care, home modifications to make the home wheelchair accessible, and an electric mobility cart. The Commission explained:

> We are not persuaded that her work accident was a substantial factor in creating any need for these modalities as recommended by Dr. Koprivica. We find the need for any [of these items] is the result of the progression of her diabetes and resulting complications and not due to the work accident.

Ms. Fitzwater contends that Dr. Koprivica's undisputed testimony constituted substantial and competent evidence that she will require those specific benefits as a result of her work-related injury. She says there was absolutely no evidence to support the Commission's finding that these needs would result from the diabetes alone, without the work-related injury. She notes that Employer offered no testimony or medical opinions and introduced no medical records upon which the Commission could have concluded that these needs were due to any condition other than her work-related injury. She points out that the doctors agreed the limp from her broken ankle caused her to develop Charcot's joint in her foot, which resulted in her back pain. The Commission accepted the conclusion that this rendered her totally and permanently disabled. To then conclude that the Cam walker and the medication are sufficient to address the effects of the injury is contrary to the evidence and without legal or factual support, she argues.

■ The Missouri Workers' Compensation Act includes an allowance for future medical treatment for an injured worker in

---

**3.** All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

section 287.140.1. That statute provides in part:

> In addition to all other compensation ..., the employee shall receive and the employer shall provide such medical ... treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

*Id.* The employee has the burden of establishing all of the statutory elements of a compensable workers' compensation claim. *Estes v. Noranda Aluminum Co.,* 574 S.W.2d 34, 37–38 (Mo.App.1978). In order to receive future medical benefits under the Act, a claimant is not required to present "conclusive evidence" of the need for future medical treatment. *Dean v. St. Luke's Hosp.* 936 S.W.2d 601, 603 (Mo. App.1997), *overruled on other grounds by Hampton,* 121 S.W.3d at 227. Rather, he need only demonstrate a "reasonable probability" that future medical treatment is needed by reason of his work-related injury. *Id.* " 'Probable' means founded on reason and experience which inclines the mind to believe but leaves room for doubt." *Id.* at 604. The employee also must establish that the future medical care is "reasonably required" to "cure and relieve from the effects of the injury." § 287.140.1. The claimant must show that the need for the care requested "flow[s] from the accident." *Landers v. Chrysler Corp.,* 963 S.W.2d 275, 283 (Mo.App.1997), *overruled on other grounds by Hampton,* 121 S.W.3d at 226.

Employer says Ms. Fitzwater failed in her burden of establishing that her need for these future expenses was tied to the injury in that the only evidence of that need came from Dr. Koprivica's medical report and deposition. Employer notes that Dr. Koprivica examined Ms. Fitzwater only once. Employer points out that neither Dr. Haas nor any of her treating physicians recommended such additional measures.

Apart from Dr. Koprivica's report and deposition, there was no evidence that, as a result of the work-related injury, Ms. Fitzwater would require on-going nursing care and a wheelchair or electric cart. Dr. Koprivica did refer to a note from Dr. Goddard, dated December 9, 2003, which noted difficulty climbing stairs, and which stated that Ms. Fitzwater "needs to be on one level or some sort of accessibility on the stairs."

There was evidence, much of it coming from Dr. Koprivica, which established that Ms. Fitzwater's diabetic condition was serious, progressive, uncontrolled, and likely headed toward complete debilitation, apart from any injury. That evidence supports the Commission's conclusion that some of the future medical aids recommended by Dr. Koprivica (nursing care, electric scooter, and home modifications) could be attributed to the diabetes and its complications rather than to the injury; while others (the Cam walker and the medication for the claimant's back) should be attributed to the injury.

The Commission had medical records from Dr. Goddard, who had treated Ms. Fitzwater's diabetes for years. Also, Dr. Barnhill's records showed that Ms. Fitzwater had not effectively maintained control of her diabetes, and the disease continued to progress. Ms. Fitzwater has been insulin dependent since 1973 and has not maintained control over her diabetes. She was hospitalized with uncontrolled diabetes in 1972 and 1982. Dr. Koprivica stated that she has generalized decreased strength in both lower extremities and decreased sensation in both feet, probably as a result of the diabetes. Dr. Koprivica reported that Ms. Fitzwater's poor control over her diabetes had resulted in "a significant disability that pre-dated February 9,

629

2001," representing a 35% permanent partial disability. He called her diabetes a "progressive, disabling condition."

Dr. Koprivica said the work-related injury was a "substantial factor" in her limited ability to stand and walk and the need for these interventions, but it was not "the exclusive contributor to her problems." "It is very clear that she has an underlying systemic problem of diabetes mellitus with multiple systemic complications," he reported. He agreed that her systemic complications were the result not only of having diabetes for thirty years, but also the result of having "such poor control" over her diabetic condition for "such a long period of time." Dr. Koprivica acknowledged that her diabetes has progressed since 2001, and he stated that it has contributed to many of the complications she has had due to the injury.

The Commission allowed future pain medications for the claimant's lower back and the Cam walker for the foot, both of which were injury-related. The Commission was also asked to believe that Ms. Fitzwater would need the electric scooter, home modifications, and future nursing care, and that such were injury-related. The Commission was not required by the evidence to reach that conclusion. It is not necessarily inherently contradictory for the Commission to conclude that she is totally and permanently disabled, and that the foot injury was a substantial or primary factor in her current disability; and at the same time to conclude that any need for the anticipated nursing care and other disputed future aids remains independent of the injury because of the severe, progressive, and uncontrolled diabetes. The Commission could have reasonably made its findings and reached its result upon its consideration of all the evidence before it. *Henley v. Tan Co.*, 140 S.W.3d 195, 201 (Mo.App.2004).

## Conclusion

There is sufficient competent and substantial evidence upon which the Commission could base its award and its denial of the disputed future medical benefits. The judgment is affirmed.