Benjamin VICE, Deceased, and Stacey Kohl, Appellants,

v.

ADVANTAGE WASTE SERVICES, INC., and Accident Fund Insurance Company of America, Respondents.

No. SD 29671.

Missouri Court of Appeals, Southern District, Division One.

Oct. 15, 2009.

Randy Charles Alberhasky, The Alberhasky Law Firm, P.C., Springfield, for Appellant.

Richard L. Schnake & Kevin H. Dunaway, Neale & Newman, L.L.P., Springfield, for Respondents.

ROBERT S. BARNEY, Judge.

Appellant Stacey Kohl ("Claimant"), mother of Norman Benjamin Vice ("Employee"), now deceased, appeals from the Labor and Industrial Relations Commission's ("the Commission") "Final Award Denying Compensation (Affirming Award and Decision of Administrative Law Judge ['ALJ'])" ("the Final Award") denying worker's compensation benefits under section 287.240 arising from Employee's death.[1] Primarily at issue is whether Claimant was partially dependent on Employee's wages at the time of Employee's work-related death. Appellants assert two points of Commission error.

The record reveals that Employee, a nineteen-year-old male, was employed by Advantage Waste Services, Inc. ("Employer") when on August 19, 2005, he died in a motor vehicle accident while in the course and scope of his employment with Employer. At the time of his death Employee was not married and had no children.

On June 13, 2006, Claimant filed her "Claim for Compensation" based on Employee's death from a "fatal" "on the job, motor vehicle collision." On December 21, 2006, Claimant filed an amended "Claim for Compensation" in which she asserted she had "been a partial dependent of [Employee] since he was 17 y[ea]rs old" such that she was entitled to death benefits under the workers' compensation laws.

A hearing was held before the ALJ on August 26, 2008. At the hearing in this matter Claimant testified she was a single mother who had raised Employee on her own and that the two lived together in the family home in Arkansas until January 31, 2005, when Employee moved to Willard, Missouri, to be closer to his girlfriend. Claimant related that since 1999 Employee had worked various jobs in an effort to help her with household expenses and even purchased his own clothing while he was still a young teenager. Claimant testified she became totally disabled in early 2003, and in the spring of 2004 Employee quit school to work full time in an effort to support the household. Claimant began receiving social security disability payments in April of 2003 and, while in his minority, Employee became eligible for social security child disability benefits.[2]

In April of 2004, while Employee was still residing with Claimant, he was notified by the Social Security Administration that because he had reached the age of majority in March of that year, he was entitled to a one-time child disability benefit payment of $6,341.00 for the period of January of 2003 to February of 2004. Employee subsequently received a check for that amount in mid-April of 2004 after he had reached his majority at eighteen years of age. Claimant stated that from

---

1. All statutory references are to RSMo 2000 unless otherwise set out.

2. At the time of the hearing in this matter, Claimant was receiving $1,040.00 per month in social security disability payments.

this benefit payment Employee gave her $5,000.00 "for [their] household so that [they] could continue keeping [their] property" and Employee instructed Claimant to use the money from time to time as she needed it "to help maintain the household."[3] Claimant also related she kept the money in a safe location in her home and generally took $50.00 out per week because Employee "wanted to help out with $50 a week toward the household expenses." Claimant also stated the money Employee gave her only lasted until January of 2005.

Claimant further testified that after Employee moved to Missouri in February of 2005 he worked full time, paid his own bills, and supported himself. However, Employee did not provide Claimant with any support during this period of time as he was not making much money in his new position in Missouri. Saliently, Claimant testified that from February of 2005 until Employee died on August 19, 2005, she paid her own mortgage payment, credit card bills, utility bills, and other monthly expenses including food and clothing without his aid. She also related she had a boyfriend for a period of time that helped her meet her expenses, as well.

Claimant likewise testified that she and Employee had previously discussed the fact that Employee wanted to get his Commercial Driver's License ("CDL") and return home to Claimant's house in Arkansas so that he could drive a truck and aid Claimant in her monthly expenses. In June of 2005 Employee began to pursue his CDL, went to work for Employer and his wages increased.

The following month, in July of 2005, Claimant informed Employee that in an effort to save money she was going to get rid of her cellular phone. According to Claimant, Employee had told Claimant at that time that he wanted her "to keep [her] cell phone" and he was "going to start helping out because [he] got this really good job with this trash company, and [he was] going to send her [$100 a month] for sure." Likewise, Employee told her he would "send [her] more money than that if [he could]," and that he would give her $100.00 per month but would pay it in two installments of $50.00 per check. Prior to his death, Employee had sent Claimant a single check in the amount of $50.00 which was dated August 2, 2005. It contained the notation "phone" in the memo portion of the check. Claimant testified that she spoke to Employee on the morning of his death and he indicated he would be sending her another check for $50.00 that very day but died before he was able to send the second check.

At the conclusion of the hearing, the ALJ denied Claimant's claim on the basis that she failed to prove under section 287.240(4) "that she was actually dependent for support, in whole or in part, upon [Employee] at the time of his [death]." The ALJ found that Employee "was dependent upon [Claimant] for housing until February 1, 2005. From that date until his death, [Employee] paid his own expenses and provided [Claimant] with only one $50.00 check. Occasional gifts do not arise to the level of dependency." Reiterating that "dependency must be determined as of the time of death," the ALJ found the $5,000.00 Employee gave to Claimant in 2004 "was exhausted months prior to [Employee's] death" such that "[t]here is no evidence . . . that Claimant was a dependent of [Employee] at the time

**3.** She testified that Employee used the remainder of the money from the benefit payment for job training and equipment.

of his death. A one-time payment by [Employee] to [Claimant] to help with a cell phone bill is hardly proof of dependency."

Claimant filed her "Application for Review" with the Commission on October 20, 2008. On February 2, 2009, the Commission issued the Final Award which incorporated and affirmed the findings of the ALJ. This appeal by Claimant followed.

Claimant asserts two points of Commission error. For ease of analysis, we shall address Claimant's second point relied on first. In her second point relied on, Claimant maintains the Commission erred in denying compensation "based upon a finding that 'there is no evidence in this case that Claimant was a dependent of [Employee] at the time of his death....'" She asserts that such a finding was not supported by substantial and competent evidence because

> there was a pattern of support that went beyond that of a 'one time' gift in that it was [Employee's] expressed intent to support [Claimant] indefinitely by paying her $50 every two weeks, consistent with the $5,000 payment made by [Employee] to [Claimant] after he turned 18 years old, his history of providing physical as well as financial assistance to [Claimant] and his initial payment of $50 just prior to his death.

 Section 287.495.1 provides the standard of review for a workers' compensation case. It states in relevant part:

> [t]he court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the [C]ommission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the [C]ommission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

*See Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003).[4] "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award...." *Id.* at 222–23. " '[T]he Commission, as the finder of fact, is free to believe or disbelieve any evidence,' and this [C]ourt is bound by the Commission's factual determinations." *Clark v. Harts Auto Repair,* 274 S.W.3d 612, 617 (Mo. App.2009) (quoting *ABB Power T & D Co. v. Kempker,* 236 S.W.3d 43, 49 (Mo.App. 2007)). " 'The Commission is the sole judge of the credibility of witnesses and the weight and value to give to the evidence.' " *Clayton v. Langco Tool & Plastics, Inc.,* 221 S.W.3d 490, 493 (Mo.App. 2007) (quoting *Blackwell v. Puritan–Bennett Corp.,* 901 S.W.2d 81, 85 (Mo.App. 1995)). Typically in conducting our review, this Court reviews the findings of the Commission; however, "[i]f the Commission incorporates the [ALJ's] opinion and decision, the reviewing court will consider the Commission's decisions as including those of the [ALJ]." *Copeland v. Thurman Stout, Inc.,* 204 S.W.3d 737, 740 (Mo.App. 2006). "The Commission's interpretation and application of the law ... are not binding on this [C]ourt and fall within our realm of independent review and correction." *Bowers v. Hiland Dairy Co.,* 132

---

4. We note several cases overruled by *Hampton* are cited in this opinion in support of other principles of law not affected by the *Hampton* ruling. *Hampton,* 121 S.W.3d at 224–32. No further acknowledgment of *Hampton*'s effect on those cases needs to be recited hereafter.

S.W.3d 260, 263 (Mo.App.2004). "On review we are only required to find whether the Commission could have reasonably made its findings and reached its result upon its consideration of all the evidence before it." *Henley v. Tan Co., Inc.,* 140 S.W.3d 195, 201 (Mo.App.2004). "We examine the whole record to determine the issue of reasonableness, not to examine the amount of unfavorable evidence." *Id.*

Section 287.240(4) defines the term "dependent:"

[t]he word 'dependent' as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, *who is actually dependent for support, in whole or in part, upon his or her wages at the time of the injury.* The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee, and any death benefit shall be payable to them to the exclusion of other total dependents:

(a) A wife upon a husband with whom she lives or who is legally liable for her support, and a husband upon a wife with whom he lives or who is legally liable for his support....

(b) A·natural, posthumous, or adopted child or children, whether legitimate or illegitimate, under the age of eighteen years.... *In all other cases questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury....*

(Emphasis added.)

■■■ "The question of actual dependency is a question of fact to be determined in accordance with the facts *at the time of the employee's injury." Henley,* 140 S.W.3d at 199 (emphasis added). "While a 'partial dependent' is one who has some means, but not sufficient means for his support, a 'total dependent' is one who has no means whatever to support him-

self." *Id.* " 'Dependence within the meaning of the Workmens' Compensation Law does not mean absolute dependency for the necessities of life, but rather that the claimed dependent looked to and relied upon the contributions of the employee, in whole or in part, as a means of supporting and maintaining himself.' " *Id.* at 199–200 (quoting *Craig v. Calvert,* 572 S.W.2d 235, 237 (Mo.App.1978)). "It is not necessary to show that the employee was 'legally liable' for the support of the claimant." *Id.*

■■ In this case, there are no presumptive dependents in that Employee was not married and had no children at the time of his death. Accordingly, in determining if Claimant was Employee's dependent under section 287.240(4) Claimant was required to prove she was "actually dependent for support, in whole or in part, upon [Employee's] wages at the time of ..." his death. *Henley,* 140 S.W.3d at 199. We agree with the Commission that, unfortunately, Claimant did not meet that burden.

Claimant urges this matter is "nearly identical" to the situation found in *Rasor v. Marshall Hall Grain Corporation,* 224 Mo.App. 253, 25 S.W.2d 506 (1930). In *Rasor,* the claimant, who was the employee's mother, was a sixty-year-old widow who lived rent free on land her family used to sharecrop. *Id.* at 506–07. The employee would visit the claimant on holidays and "stayed at home [with the claimant] during the first part of 1927...." *Id.* at 507. The employee provided the claimant with the following support in the two years prior to his death: he "contributed $72.50 to the support" of the claimant from May to August of 1926; he "sent her about $45" from August to December of 1926; "at Christmas time" in 1926 he gave the claimant "about $45 ... to take care of the expenses of the home;" in early 1927 he

"purchased hay for the stock on the farm . . . ;" he also contributed to the claimant $43.50 from December of 1926 to May of 1927; and from May of 1927 until the time of his work-related death in August of 1927 he gave the claimant $75.00. *Id.* Also, "[d]uring the winter and spring months when [the employee] was home he looked after what little live stock was on the place and prepared the soil for [the claimant's] garden." *Id.*

> The [claimant] had the income from three cows and some chickens, although the cows and chickens were purchased and owned by the [employee]. [The employee] also bought and paid for the feed which they used. In 1927 they butchered two hogs, but the brood hogs from which these two were raised were bought by [the employee]. [The claimant's] income from the cows and chickens owned by [the employee] amounted to about $12 a month. This income from the [employee's] property, together with the amount he sent her, was [the claimant's] total income and sole source of livelihood, with the exception of some vegetables which she raised in the garden. She paid no rent for the farm. Her grocery bill amounted to about $6 per month when [the employee] was at home, and was less when he was away.

*Rasor*, 25 S.W.2d at 507. Based on the foregoing, the Commission "found upon this evidence that the claimant was only a partial dependent, and awarded her a compensation of $6 per week for a total of two hundred weeks." *Id.* The claimant appealed. *Id.*

On appeal, "[t]he sole question presented . . . by this record is whether or not, on the conceded facts, plaintiff was a total or partial dependent . . ." of the employee. *Id.* In reversing the Commission, the appellate court noted:

[t]he house in which [the claimant] lived and the little farm were evidently of so little value that its owner did not care to charge rent therefor. The cows were purchased by the [employee], and this was also true with respect to the chickens. We cannot conceive of a case where the question of total dependency was more clearly shown than in this one. The claimant had no income of any substantial value aside from that which she received directly or indirectly from the [employee]. She did not own any property, and did not have any relatives from whom she received a single cent, gratuitous or otherwise, except that which she received from [the employee], the substantial portion of which consisted of that part of his wages which he contributed to her support. She was therefore a total dependent within the meaning of the law.

*Id.* at 508.

The present matter is vastly different from the situation found in *Rasor*. Here, there are only two instances of Employee providing support to Claimant. In April of 2004, the month after he turned eighteen years old, he gave her $5,000.00 from his Social Security child disability benefit check. Thereafter, in the sixteen months that Employee resided in Missouri and away from Claimant's home in Arkansas, he sent Claimant a single check for $50.00 as opposed to the multiple monetary gifts the employee in *Rasor* supplied to his mother. Further, there was testimony from Claimant that during that period of time Employee provided her with no in-kind support such as purchasing food or clothing for her, and there was no evidence Employee even visited Claimant during that period of time.[5] However, the employee in *Rasor* visited home often, pur-

---

5. Claimant testified she had not visited Employee since he moved to Missouri.

chased food and grain for the livestock that resided with the claimant and helped her out in a general way around her house.

Additionally, Claimant in the present matter testified she owned her own home and paid her mortgage every month; that she had "good credit" and had been "able to finagle" paying her bills on her own; that she was able to independently pay her utility bills and meet her expenses; and that she "[does not] let any[one] pay [her] bills" and would not "let anybody take over [her] payments on anything." Also, the bill Claimant sought assistance from Employee in paying was for her cellular phone, which given her particular circumstances, arguably was not a necessity.[6] Whereas, in *Rasor*, the claimant's only source of income other than the employee was the produce she raised in her garden as well as products of the livestock she kept at her home, and she was not able to provide herself with groceries and utilities were it not for the employee. *Rasor* is not persuasive in this matter.

 Here, the issue of whether Claimant was a dependent of Employee comes down to the $5,000.00 Employee gave Claimant in April of 2004 and the single $50.00 check he sent her in the mail a few weeks before he died in August of 2005. The $5,000.00 Employee gave to Claimant was given to her a month after he had turned eighteen years old, while he was still residing in Claimant's home. Additionally, in the sixteen months between the time Employee left the Arkansas home and his death, he had not provided any monetary support to Claimant yet she was able to pay her utilities, credit card bills, and mortgage on her social security disability payments without his aid.[7] There is insufficient evidence showing that Claimant was dependent on Employee for her support at the time of his death.[8] The Commission did not err in denying dependency compensation to Claimant. Point II is denied.

Turning now to her first point relied on, Claimant asserts the Commission erred in denying her claim for dependency compensation "on the ground that the $5,000 that [Employee] paid to her after he turned 18 years of age was 'given to [her] ... when he was still a minor living at home.'" Claimant asserts Employee

> was not a minor and was living at home in order to assist [Claimant] with her bills in that the social security paperwork at the time of [Employee's] receipt of the $5,000 check specifically acknowledged that he was no longer an eligible dependent, he was no longer under 18 years of age and he was working full time rather than finishing high school in order to support [Claimant].

---

6. We note that at the hearing Claimant testified she told Employee that in order to "try to live within [her disability] check means" she was "going to have to get rid of *one* of [her] phones, home phone or cell phone or something." (Emphasis added.) Accordingly, Claimant's cellular phone was not her sole source of communication.

7. We note Claimant argues her social security disability benefits should not be considered as income because she "did not 'earn' the benefits" and such benefits are not taxable. However, Claimant does not cite this Court to any authority for such a proposition. "Where 'the appellant neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the points abandoned....'" *Kimble v. Muth,* 221 S.W.3d 419, 423 (Mo.App.2006) (quoting *In re Marriage of Spears,* 995 S.W.2d 500, 503 (Mo.App.1999)). Accordingly, we disregard this portion of Claimant's argument.

8. As an aside, we note that in her amended claim filed with the Commission, Claimant stated she was "partially dependent" on Employee for support. On appeal, she seems to assert at times that she was totally dependent on Employee for her support. This is not an issue that was preserved in this appeal and it will not be discussed.

We have already found in our analysis of Point II above, that the Commission did not err in denying Claimant's request for compensation because there was insufficient evidence that she was a dependent of Employee. Here, Claimant takes issue with the Commission's factual statement that the $5,000.00 was given to her by Employee "when he was still a minor living at home."

A review of the record reveals that Employee turned eighteen on March 7, 2004, and he received the $5,000.00 check from the Social Security Administration in mid-April of 2004. He gave the money to Claimant around that time. Accordingly, although Claimant was still living at home at that time he was technically no longer a minor; the Commission's factual recitation is incorrect. However, "since [the Commission's] result was correct ... the reason it gave was immaterial in the sense that an incorrect reason would not warrant the reversal of a correct result." *Mosier v. St. Joseph Lead Co.*, 205 S.W.2d 227, 232 (Mo.App.1947); *see Ferguson v. Twin Hills Golf and Country Club, Inc.*, 679 S.W.2d 355, 358 (Mo.App.1984). The Commission's incorrect factual recitation does not change the outcome in this matter in that it is clear Claimant was not a dependent of Employee under the statutory definition set out in section 287.240(4). Point I is denied.

The Commission's award is consistent with the applicable legal standard and is supported by competent and substantial evidence. We affirm the Final Award of the Commission.

BATES, P.J., and BURRELL, J., concur.